# FIDELITY TRUST COMPANY v. J. J. GALBRAITH.

Eastern Section. June 15, 1929.

Petition for Certiorari denied by Supreme Court, October 12, 1929.

Anderson & Word, of Knoxville, for appellant.
Fowler & Fowler, of Knoxville, for appellee.

OWEN, J. The complainant has appealed from a decree dismissing its bill and denying any relief. The complainant is the receiver of the Knoxville Trust Company. The bill in the instant case seeks to recover on a check drawn by the defendant for $330.50 dated August 20, 1924, and a note for $2500 dated July 1, 1924, which check and note came into complainant's possession as receiver for the Knoxville Trust Company. The Knoxville Trust Company, a Tennessee Banking Corporation, doing business in Knoxville, Tennessee, became insolvent the later part of the year, 1924, and complainant was appointed receiver of said Knoxville Trust Company, November 26, 1924.

The defendant insists in his answer that he is not liable on either of these two instruments for want of consideration. He insists that he signed both the note and the check at the request of J. Albert Robbins, who was the president and manager of the Knoxville Trust Company, under representations Robbins made to the defendant that H. H. Galbraith, a brother of the defendant, was indebted to the Knoxville Trust Company. Defendant's brother was out of the City of Knoxville at the time the check and note were both executed. Robbins agreed to hold defendant's check until H. H. Galbraith should return to Knoxville. The defendant insisted that the note sued on was executed for the benefit of J. Albert Robbins and because Robbins insisted that auditors or examiners were making an

audit of the Knoxville Trust Company and Robbins wanted a new note. It was insisted that J. Albert Robbins was the beneficiary of the loan represented by the $2500 note and that the defendant and his brother owed no part of it. It appears that about the time the Knoxville Trust Company failed, J. Albert Robbins left Knoxville, his deposition was not taken in the instant case. The defendant testified that his brother, H. H. Galbraith, had returned to Knoxville and was in Knoxville when the defendant gave his deposition but H. H. Galbraith did not testify in the instant case. As to the $2500 note, it appears that Robbins, J. J. Galbraith and H. H. Galbraith had numerous transactions with each other, they endorsed for one another and the three, Robbins, the defendant and H. H. Galbraith, in 1922, became indebted to J. F. Baker, an attorney of Huntsville, Tennessee, and now deceased, to the extent of $2500. The $2500 note sued on in the instant case was executed to take up the Baker indebtedness. This Baker note, after the death of Mr. Baker, was placed in the hands of Mr. John Ayres, attorney of Knoxville, for collection. Mr. Ayres found with the Baker note the following agreement:

"September 19, 1922. James F. Baker. We, the undersigned, as endorsers of a note for $2500 signed by J. Albert Robbins, secured by real estate notes of J. J. Connor, duly agree as endorsers to an extension of said note for sixty days from September 17, 1922, and guarantee payment of same or any renewals thereof."

Signed J. J. Galbraith, H. H. Galbraith.

Mr. Ayres testified as follows:

"The only transaction I had in connection with in this, other than with Mr. Robbins, was—Joe Galbraith came to the office shortly after I had written Albert Robbins, demanding payment, and asked me if I would be willing to let Robbins pay the note off at the rate of $500 a month, and hold the notes of H. M. and Flora Layman and Georgia Smith, which were real estate notes and were made payable to the order of J. J. Connor. On account of the experience I had had on another loan with Albert Robbins, I refused this request, and the next day or several days afterwards I met Mr. Robbins on the street and advised him that this matter would have to be adjusted or I would add the attorneys' fees."

It appears from the evidence of the bookkeeper, of the Knoxville Trust Company, and from the record of said company that the note sued on was executed July 1, 1924, for $2,500 payable six months after date. On that date the Knoxville Trust Company gave Mr. John Ayres, attorney, a check for $2,531.25. J. J. Galbraith, on that date, gave the Knoxville Trust Company a check for $31.25. It appears that when Galbraith paid $31.25, the Knoxville Trust Company took care of the balance due on the Baker note, $2500, with

the $2500, J. J. Galbraith note of July 1, 1924, payable to the Knoxville Trust Company. Galbraith, on July 3, 1924, had a transaction with the Knoxville Trust Company for which they receipted him for $358.85, this receipt covered the following items as shown by the evidence of Mrs. Hendrix, the bookkeeper, and we quote from her testimony as follows:

"Q. I will ask you to state the items that went to make up the Galbraith check of $358.85? A. Receipt book shows that commission account was credited with $30.50, being commission on $1300 loan to August 13th. Commission on $1000 loan to July 10th; commission on $1500 loan to July 5th, $750; commission on B. M. Gaston loan to March 24th, $112 53, and cash exchange or amount paid to Ayres, $31.25.

(MR. WORD: It is agreed that the foregoing answer is read into the deposition by the witness from the receipt book of the Knoxville Trust Company, and that same may be used as evidence in lieu of the book).

"Q. Have you also the deposit slip showing the deposit of the Galbraith check above referred to? A. Yes. On July 3, 1924, Knoxville Trust Company deposited with the City National Bank check of J. J. Galbraith for $449.10.

"Q. Were the items which you have read into the record including the $31.25, taken out of this check? A. Yes.

"Q. I will ask you to file said deposit slip as Exhibit No. 2 to your deposition? A. I so file.

"Q. Mrs. Hendrix, I will ask you if J. J. Galbraith had executed any other note to the Knoxville Trust Company at that time; that is, in July, 1924,—a $2500 note? A. No.

"Q. The $2500 note sued on here, then, is the only $2500 note owed by Galbraith to the Knoxville Trust Company during July, 1924? A. Yes.

"Q. I will ask you to state if your records show that John Ayres had a note for collection that belonged to the Baker estate? A. Yes.

"Q. Was the $2531.25 check to Ayres to take up the note held by the Baker estate, which was executed either by Mr. Robbins or Galbraith and endorsed by Harry Galbraith and J. J. Galbraith? A. Yes.

"Q. I will ask you just what your records show with reference to the note held by Ayres, attorney for the Baker estate? A. The $2500 loan on the books of the Knoxville Trust Company now, was entered on October 8, 1924, which note was dated July 1, 1924, and is the note sued on in this cause. This note took up the note dated March 17, 1922, which was entered on the Knoxville Trust Company's books on July 1, 1924, in the name of J. J. Galbraith.

"Q. Mrs. Hendrix, have you a copy of your ledger sheet showing the entry of the note dated March 17, 1922, which was entered

on the Knoxville Trust Company's books on July 1, 1924, setting up the $2500 note referred to? A. Yes.

"Q. I will ask you to file said copy from your ledger as Exhibit No. 3 to your deposition. A. I so file.

"Q. I will ask you to ·explain what the $25 item is, on this exhibit. A. This $25 item, entered on October 7, 1924, is commission on $2500 loan of J. J. Galbraith for six months.

"Q. Did Mr. Galbraith pay to the Knoxville Trust Company, on October 7, 1924, a check which included this commission on this $2500 note? A. Yes.

"Q. What was the amount of his check of October 7, 1924? A. $51.

"Q. What was the other $26 for? A. This $26 was interest on a $1300 note for ninety days.

"Q. I will ask you to file, Mrs. Hendrix, a copy of the receipt from the Knoxville Trust Company to J. J. Galbraith for $51, dated October 7, 1924, about which you have just testified? A. I so file.

"Q. Have you also a deposit slip to the Knoxville Trust Company, showing the deposit of this Galbraith check on October 7, 1924? A. Yes.

"Q. I will ask you to file that as Exhibit No. 5 to your deposition? A. I so file.

"Q. I will ask you to file, as Exhibit No. 6, a copy of your ledger showing the entry of the $2500 note of Galbraith to the Knoxville Trust Company, on which this suit is brought? A. I so file.

"Q. Mrs. Hendrix, I will ask you if your records do not show what notes were up as collateral to the note dated March 17, 1922, which was held by the Baker estate, and collected by John Ayres, attorney? A. The ledger sheet shows that note of $2500, dated March 17, 1922, was secured by Layman and Smith notes.

"Q. Do you know whom the Layman and Smith notes belonged to? A. No, I do not.

"Q. Do you know what became of them after the note held by the Baker estate was paid to John Ayres, attorney? A. No.

The defendant, in his explanation as to the note transaction, testified as follows:

"Q. Did you execute a check to the Knoxville Trust Company on or about October, 1924, to pay $26 interest on $1300, ninety day note, and $25 premium on $2500, six months note? A. Don't remember whether I did or not. Would have to look at my book.

"Q. You say that you didn't pay to the Knoxville Trust Company on or about October 7, 1924, $51 for those two items? A. I can't remember whether I did or not. If you have a receipt for it, why, just say I did, but I don't remember about it.

· "Q. You were, Mr. Galbraith, liable on the Robbins notes which Baker held, as endorser? A. I was.

"Q. I will ask you Mr. Galbraith if the note held by Baker isn't a note executed on March 17, 1922, and secured by two real estate notes, the notes being from Layman to J. J. Connor and from Smith to J. J. Connor? A. Yes.

"Q. I will ask you to state Mr. Galbraith if the note that was cashed by Baker wasn't executed by J. Albert Robbins on March 17, 1922, and made payable to your order? A. I don't know whether it was or not.

"Q. You don't say that it wasn't made payable to your order? A. Well, I don't think it was.

"Q. I will ask you if you didn't as the payee endorse the note and have your brother H. H. Galbraith endorse it? A. No. My understanding is that the note was signed by J. Albert Robbins and made payable to H. H. Galbraith and he endorsed it, and I endorsed it and got the money from Baker, was my recollection of it, and I turned the money over. Don't remember whether I turned the money over to H. H. Galbraith or to J. Albert Robbins.

"Q. You could be mistaken about that. It could have been made payable to you and endorsed by H. H. Galbraith instead of made payable to H. H. Galbraith and endorsed by you, couldn't you be mistaken about that? A. The reason I don't think it was made payable to me, because I don't remember ever handling any notes for J. Albert Robbins, and I have handled a good many for H. H. Galbraith."

We find as a fact that the defendant, J. J. Galbraith was obligated as an endorser and guarantor to J. F. Baker or the Baker estate, at the time Mr. Ayres or attorney made the collection, to the extent of $2531.25. The defendant paid by check $31.25 and the Knoxville Trust Company loaned him $2500 and the $2500 loaned by the Knoxville Trust Company was used in paying a debt that the defendant, J. J. Galbraith was obligated to pay and that there was a valid consideration for making this loan by the Knoxville Trust Company and the execution of the note by the defendant upon which suit was executed.

We are of the opinion that the Chancellor was in error in holding that the defendant was not liable on this note. As to the check for $330.50 sued on, it appears that this check has marked on its face for "Tulip street property." It appears that in October, 1913, Noble Smithson executed a note for $1000 to Fannie H. Lane secured by a trust deed on a house and lot located at 807 Tulip street, Knoxville, Tennessee. H. H. Galbraith was interested with Noble Smithson in this transaction and endorsed the $1000 note. It appears that Smithson borrowed $1500 on this property from J. Albert Robbins. In 1922 H. H. Galbraith was in bad health and continued so for five or six years. The defendant transacted business for his brother H. H. Galbraith. We infer from the record that they were interested jointly in various transactions and occupied the same

offices when H. H. Galbraith was able to attend to business. Robbins sold his three notes to the Knoxville Trust Company. In 1924 Smithson died, the note of Galbraith and Smithson passed into the hands of the East Tennessee Savings Bank. The Tulip street property was foreclosed after the death of Smithson and H. H. Galbraith, evidently to protect himself or from some other reason, had the title, at the foreclosure sale, placed in one B. J. Mooney. Mooney executed a mortgage to take care of taxes, insurance, repairs, interest and other charges, there was a deficit between the Mooney mortgage and the amount that the Knoxville Trust Company held against the Tulip street Smithson property. H. H. Galbraith being out of the city, J. J. Galbraith gave his check for $330.50 and marked on the check "Tulip street settlement." It appears that the Knoxville Trust Company agreed to hold this check of the defendant as a cash item or treat it as a temporary loan. The bookkeeper for the Trust Company said they often held the defendant's checks for sometime as he would draw checks and would have them held because they would not be paid on account of insufficient funds. It appears that the notes that B. J. Mooney executed were sold by the Knoxville Trust Company to Ellen Irene Sharp. Ellen Irene Sharp later brought a suit in the chancery court to collect these notes, and to clear up the title to the Tulip street Smithson property in regard to this transaction, the defendant testifies as follows:

"I will ask you to state whether or not you and your brother H. H. Galbraith, and your other brother Charlie Galbraith executed a contract to Irene Sharp agreeing to pay those notes as soon as the title was cleared up, and take the property? A. Well, we made a similar agreement to that. There was some sort of compromise connected with that in consideration of the title affected and all that we would pay so much for the property."

It further appears that the defendant owed the Knoxville Trust Company on other notes that are not sued on but he had agreed to pay the other notes. The $2500 note in controversy is the only $2500 note that the defendant had ever executed. The burden of proof to show the lack of consideration and the invalidity of the note and check sued on is upon the defendant. We are of the opinion that he has not carried the burden; that both the note and the check were executed for a valuable consideration and that the defendant is liable on each one.

It results that the decree of the Chancellor is reversed, complainant's bill is sustained and a decree will be rendered in favor of the complainant against the defendant for the amount of the note and the amount of the check and interest on each one from the maturity of the note and the date of the check and all the costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.