LONG v. RANGE et al.—213 S. W. (2d) 52.

Eastern Division.   March 9, 1948.

Petition for Certiorari denied by Supreme Court, June 12, 1948.

H. K. Pemberton, Huntsville, and Jeffers & Jeffers, of Oneida, for plaintiff in error.

Howard H. Baker, of Huntsville, for defendants in error.

HOWARD, J.   This case was instituted in the Circuit Court of Scott County by A. Z. Long, hereinafter referred to as plaintiff, against Taylor Range, O. E. Clouse and Roy J. Range, hereinafter referred to as defendants upon a note dated January 5, 1946, and payable ninety days after date in the amount of $1,515 with six per cent interest from date of execution; said note provides that the maker shall pay attorney's fees and cost of collection.

Aside from denying liability on the note, defendants filed a special plea in which it was insisted that plaintiff perpetrated a fraud upon them by padding the stock of mechandise they purchased with old, worthless and unsalable articles; that the note was without consideration; and that plaintiff agreed to credit said note with merchandise that defendants were unable to sell.

The case was heard by the Circuit Judge without a jury and a Chancery cause under Code Section, 10329, and at the conclusion of the evidence the defendants' plea was sustained and the case was dismissed. Thereafter, a motion for a new trial was overruled and plaintiff has appealed in error to this Court.

Defendants wanted to go into the restaurant business in the town of Oneida and inquired of plaintiff if they might lease a part of his building which was being used as a dry gods store, it being the south side of the first floor and fronting on one of the main streets of Oneida.

Plaintiff agreed to lease defendants the building provided they would purchase the stock of merchandise located therein, which plaintiff valued at from $2,500 to $3,000. This offer was acceptable to defendants who paid plaintiff $100 "as a binder," and plaintiff and two of the defendants signed the following contract:

"Oneida, Tennessee
"January 3, 1946.

"This contract or lease under the above date, A. Z. Long, first party, do lease to O. E. Clouse, and Taylor Range, second party, one south side of store building on Main Street, size abuot 50 x 25 feet.

"Second parties agree to pay the sum of $60.00 each month in advance for the period of twelve months. Also agree to buy stock of goods now in building, after invoiced will pay cash in hand for same. Second party

agree to pay one-half of water bill, also agree to cut lights on own line and meter. Second party agree to pay all expenses of light and fixtures and keep up same. Second party agree to return building as good as he found same.

"Signed: A. Z. Long

"O. E. Clouse

"Taylor Range."

Defendants, with the assistance of plaintiff and his wife, made an inventory and invoiced the stock of merchandise at $4,515.58, and upon completion of the inventory defendants insist they paid plaintiff $3,000.58 in cash and executed the $1,515 note for the remaining purchase price.

There is a dispute in the evidence over the invoices as well as over the amount defendants paid plaintiff in cash. Plaintiff insists that he invoiced the stock of merchandise at $4,315.58, and that the defendants' cash payment amounted to $2,800.58.

Inasmuch as the defendants admit the execution of the note, the dispute over the invoices, as well as over the amount of the cash payment, is not material to the issues involved and further reference to this dispute will be omitted.

Upon completion of the inventory the defendants were unable to pay plaintiff in cash the invoiced price for the stock of goods. Defendants had only $3,000 available and plaintiff offered to accept a cash payment and take defendants' note for the balance of the invoiced price. Plaintiff's offer was acceptable to defendants and they made their cash payment, executed the $1,515 note and took charge of the stock of merchandise, and began inmediately to dispose of it by private sale, public acution, and in any manner they could, the primary objective of the defendants being to get rid of the merchandise as

quickly as possible, so they could have the building available for restaurant purposes.

Defendants admit that they sold approximately $2,500 worth of merchandise in the manner heretofore described, and that they have on hand a large bulk of the unsold merchandise stored in the restaurant, which they insist is worthless and unsalable.

Defendants in their special plea insist that plaintiff perpetrated a fraud upon them by secretly transferring from the second floor of the building several articles of old, worthless and unsaleable merchandise, and that the transferred articles were packed and padded into the stock that plaintiff sold them. Plaintiff denied that this was done, but with the testimony of the three boys who assisted plaintiff with the transfer of the goods, we think there is little doubt but that it occurred and that it was done for the purpose of getting rid of old merchandise which plaintiff had on hand. However this uncommendable action on the part of the plaintiff does not relieve defendants of their liability on the note. For reasons hereinafter shown, we think that the plea of fraud and deceit is not maintainable as a matter of law.

It is apparent from defendants' plea and from their admissions appearing of record that they did not rely upon plaintiff's representations when the stock of merchandise was purchased by them, but that they relied upon the inventory and invoice made by themselves before the offer of sale was finally accepted, and if the old articles were added to the stock of merchandise by the plaintiff in the manner heretofore described before or during the taking of the inventory, defendants were bound to have seen them while invoicing the stock of goods.

Defendants admit that two of them were present with plaintiff and his wife while the inventory was being made;

and that it took three days to complete the inventory; that certain articles which appeared to be unsalable were not counted; that they, themselves, called plaintiff's attention to unsalable articles, and requested that such articles be excluded from the invoice. Defendants made no complaint to plaintiff about any of the merchandise being unsalable, nor did they offer to return any of it until all salable merchandise was sold and after maturity of the note.

█ When the defendants made the inventory and invoiced the stock of merchandise, they, themselves, were bound to have ascertained the quality and quantity of the goods they were about to buy, and where the subject is equally open to both parties, neither party is presumed to trust the other, but to rely upon his own judgment.

In Bridges v. Robinson, 2 Tenn. Ch. 720, (Cooper) complainant charged that Robinson falsely represented the entire stock of groceries to be in a sound, merchantable condition, when many of them were damaged and proved a total loss. In denying the complainant's claim, Chancellor Cooper held: "A false assertion of value upon the part of the seller, and highly colored terms of commendation, will not vitiate a contract. Misrepresentations, though false, will not be considered fraudulent where both parties have the means of information, so that by the exercise of ordinary dilgence and prudence either may rely upon his own judgment. Such assertions are plainly matters of opinion, which it is folly to rely on."

Bridges v. Robinson, supra, was approved in the case of Freeman v. Citizens National Bank, 167 Tenn. 399, at page 409, 70 S. W. (2d) 25, at page 29, in which case our Supreme Court said: "It is universally held that equity will not relieve against false representations in a case

where both parties have equal knowledge of the matter. That is to say that one cannot rely on representations known by him to be false. Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded." See also Perkins v. McGavock, 3 Tenn. 415.

█ While the stock of merchandise may not have been worth what the defendants paid for it, inasmuch as they purchased it with their eyes open, having made an inventory and satisfied themselves regarding the value and condition of the goods, we think that defendants' plea of fraud and deceit is without merit.

Nor do we think that the defendants' plea of lack of consideration for the note is sustained by the proof for the following reasons: defendants admit in their testimony that the stock of merchandise invoiced at $4,515; that they paid $3,000 in cash and executed the note sued upon for the balance of the purchase price. The fact that some of the merchandise was unsalable would not sustain the defendants' plea of lack of consideration.

Defendant O. E. Clouse on cross-examination, pages 84 and 85, testified as follows:

"Q. And you and your partners were there and took and assisted in making this invoice? A. We noticed a lot of the stuff was bad.

"Q. I say, you were there present and took and assisted in making this invoice? A. Yes, sir.

"Q. And after you got it made it was added up, that s right, is it? A. Yes, sir.

"Q. What did it amount to? A. $4,515.50.

"Q. Have you got a book to show it like Mrs. Long? A. That was what we settled on.

"Q. You have not offered it, have you? A. It is here; I have got it.

"Q. After you added all this up and had gone over these various items of merchandise there you proceeded to pay Mr. Long for his merchandise and you gave him how much cash? A. I paid him $2,050. cash. I wrote the check for Mr. Range, and I paid him $850. in cash besides the $100. I paid him the first day I was there.

"Q. This note, what does it represent? A. The $1,500. we lacked paying him."

Roy J. Range, another defendant, testified on direct examination, pages 104 and 105, as follow:

"Q. Go ahead tell how you took inventory. A. We started on the top shelf on one side. I would take down a box and count what was in it and Mr. and Mrs. Long would take down a box and count what was in it. I put down most of the figures on our side, and when I would get a box counted I would tell Mrs. Long what was in it, she would tell me the price, and she would do the same on the side they were counting on.

"Q. When it was finished do you remember what your figures showed the invoice to be? A. I don't remember exactly; it was a little over $4,500.00.

"Q. Did you have a talk before you did any paying? A. We told them we didn't have that much money. Told him we would pay them $3,000. down. He said that would be all right and we could make a note for the balance.

"Q. What did you do? A. We made a note for $1,515."

██ Under Section 7348 of our Code every negotiable instrument is deemed prima facie to have been issued for a valuable consideration, and under Code Section 7349, "value is defined as any consideration, to support a simple contract", and the burden if proof to show lack of consideration to establish the invalidity of a note or check sued on is upon the defendant. Fidelity Trust

184

Co. v. Galbraith, 10 Tenn. App. 73. In the light of defendants' testimony, we find there was ample consideration for the note.

■ The defendants' plea that plaintiff agreed to sell them the stock of merchandise for $2,500.00 is without merit. There is evidence in the record that a sale on such terms was discussed, but never definitely agreed upon. Defendants Clouse and Taylor Range, in their contract with plaintiff agreed "to buy the stock of goods now in the building; after invoiced will pay cash in hand for same."

Regardless of what offers plaintiff had previously made to sell defendants the stock of merchandise, the contract after it was signed became the agreement of the parties and it superseded all previous offers in that it clearly expresses the will and intention of the parties. Deaver v. J. C. Mahan Motor Co., 163 Tenn. 429, 43 S. W. (2d) 199.

In the case of McQuiddy Printing Company v. Hirsig, 23 Tenn. App. 434, 134 S. W. (2d) 197, 198, this Court held: "Where all oral discussions culminated in written agreement and were merged into it, parol evidence is not admissible to contradict or vary the written agreement . . . [and] the law conclusively presumes that parties to contract understand obligations thereof, and evidence is not admissible to show their understanding to have been otherwise."

■ Lastly, defendants insist that they had an oral agreement that the unsalable goods could be returned to plaintiff and that credit would be allowed on the note for them. Neither the bill of sale nor the note makes any such provision and plaintiff denied that any such agreement existed or was ever made.

The note provides as follows: "Ninety days after date we promise to pay to the order of A. Z. Long or bearer, One Thousand and Five Hundred and fifteen no/100 Dollars without defalcation, for value received; and have pledged as collateral security stock of goods and fixtures now in A. Z. Long's building."

In the case of Todd v. Third National Bank, 172 Tenn. 586, 113 S. W. (2d) 740, our Supreme Court held that: "The terms of a note cannot be varied by oral proof, and no legal conclusions can be rested upon statements of a bill which would vary provisions of note."

In Searcy v. Brandon, 167 Tenn. 218, 68 S. W. (2d) 112, 113, our Supreme Court said that: "When the maker signed this note, he engaged, or agreed, to pay it according to its 'tenor'; that is, the true meaning of the words and figures composing it. Code, section 7384. Since it provides for payment in dollars and cents only, proof of an agreement to pay in something else is incompetent."

In Bridges v. Robinson, supra, Chancellor Cooper said, 2 Tenn. Ch. on page 723: "The rule is that all verbal negotiations and stipulations between the parties to a written instrument, anterior to or contemporaneous with the execution of the instrument, are merged in it, and parol evidence of such stipulations, or to alter or qualify the terms of the instrument is inadmissible, either at law or in equity. . . . Equity has the same rule of evidence in this regard as the courts of law. It may entertain a bill to rectify a written instrument drafted, by accident, mistake, or fraud, otherwise than according to the agreement of the parties; but, if the parties deliberately execute a particular instrument, intending it to be what it is in reality, there is no principle upon which oral stipulations can be incorporated into the written instrument, or its legal effect altered."

For reasons stated, plaintiff's assignments of error are sustained and the judgment of the Circuit Court is reversed and a judgment will be entered in this Court for plaintiff against the defendants for $1,515, plus interest and fifteen per cent attorney's fees and all costs.

McAmis and Goodman, JJ., concur.