JOHN N. KELSO, Appellee. v. WINSTON H. KELSO and IOLA S. KELSO, Appellants.—292 S. W. (2d) 483.

Eastern Section. July 25, 1955.

Petition for Certiorari denied by Supreme Court, December 9, 1955.

Grimm, Tapp & Carson, Knoxville, for appellants.

Arthur D. Byrne, Poore, Cox, Baker & McAuley and George P. Taylor, Knoxville, for appellee.

AVERY, J.   This case originated in the Chancery Court of Knox County and came to this Court by appeal from the action of the Chancellor is sustaining certain

exceptions to the Report of the Clerk & Master upon an order of reference and the final judgment of the Chancellor thereon.

This is a lawsuit between two brothers growing out of a partnership business and involves, among other things, an accounting which was referred to the Master, by which reference he was required to report on eleven separate items, each and all of which are set out in the record. (R. 517, 607, 608.)

The Master's full report under the first order of reference is set out in the record. (R. 516, 517.) Exceptions were filed to that report.

On April 16, 1952, respondents renewed their motion "that the Court hear the record and set aside the order of reference pending such hearing". The motion was overruled and after hearing the exceptions, the Court of its own motion, ordered a reference on all of the items prevously submitted and appointed a Special Master, Elliott Adams, and the order of reference in the exact items were referred to the Special Master as though no report had ever been made by the Clerk & Master, and by this Order "the parties were allowed to submit additional items".

The Report of Special Master Adams was filed on December 18, 1952, and embraces seventeen pages. (R. 606-623, inc.) By this Report, the Special Master found that there was due complainant, John N. Kelso, from the respondents, Winston H. Kelso et al., $8,473.49. He allowed no interest on the amount found to be due, and John N. Kelso filed exceptions to the Report of the Master in refusing to allow interest on the said $8,473.49 from February 24, 1948, the date the bill was filed, to Decem-

ber 8, 1952, the date of the Special Master's Report, amounting to $2,448.33, and appealed from the Master's Report to the Court on this single exception.

The respondents, Winston H. Kelso and Iola S. Kelso, filed exceptions to Items 2, 3, 4, 5, 6, 9 and 11.

After a hearing upon the exceptions filed by the parties, and on July 31, 1953, the Court confirmed Items 1, 2, 3, 5, 7, 8 and 10 of the Report. He modified Items 4, 4a, 6, 9 and 11. (R. 633.)

By the several adjustments made by the Court upon the exception, he determined that complainant, John N. Kelso, was entitled to recover $5,853.12. He held that respondents had perpetrated a fraud in law upon the complainant but was guilty of no fraud in fact, and allowed interest at 6% from the date of the filing of the bill to the date of his Decree, which interest amounted to $1,908.16, and rendered judgment for that amount.

We are, therefore, on this appeal not concerned with the items in which the Special Master and the Chancellor have concurred. The case was brought to this Court by an appeal of respondents granted by the Chancellor upon oath prescribed for a poor person and errors have been assigned, and Assignment of Error III is that:

"The Chancellor erred in confirming the findings of the Special Master as to Items 1, 2, 3, and 5, and in finding, under Item 4a, that the net capital was $4,577.21, and in finding, under Item 11 that there was fraud in law, so as to make interest chargeable."

As before stated, we are not concerned with the items of the Report concurred in by both the Special Master and the Chancellor, if there is any evidence to

support them, and we find that there is evidence fully sufficient to support the concurrent findings of the Special Master and the Chancellor as to Items 1, 2, 3, 5, 7, 8, and 10 of the reference. Hence, Assignment of Error III, with respect to Items 1, 2, 3, and 5, is overruled and disallowed. Gibson's Suits in Chancery, 1269-A; Code of Tennessee, sec. 10620; Winer v. Chattanooga Feed Co., 6 Tenn. App. 415; Wright v. Batchelor Motor Co., 2 Tenn. App. 468; Dale v. Hartman, 157 Tenn. 60, 6 S. W. (2d) 319.

Passing now to Item 4a, the amended order of reference designating it "4a", is as follows:

"What were the liabilities of the Kelso Oil Company as of March 4, 1943?" (R. 600.)

In order to properly understand the explanation with respect to "4a", it is necessary to set forth here reference Item 4 as follows:

"What assets did the Kelso Oil Company have on March 4, 1943, and what was the fair cash market value thereof?

No exceptions were taken to the Special Master's Report on Item 4. It is properly made up of cash on hand, notes receivable, accounts receivable, inventory and equipment, totaling $9,905.63. (R. 609.) It must be considered however, in the light of the modification of Item "4a".

The Master's Report on Item "4a" shows liability in the amount of $7,233.08. There are 10 liabilities listed under this Item, one of which is a firm check dated March 5, 1943, referred to as Exhibit 17, amounting to $3,474.86.

It will be observed that this check is dated one day following March 4, 1943, the date as of which the Master was directed to report the liability under Item 4, and with respect to this check and Item "4a", the Chancellor found and decreed:

"That Item 4a of the Special Master's report should be modified to the extent that the liabilities of the Kelso Oil Company as of March 4, 1945, amount to the total sum of $3,758.22, rather than the sum of $7,233.08, as found by the Special Master * * *".

When the Chancellor made that finding, it of necessity required the addition of the $3,474.86 as an asset, rather than a liability, or in other words, that it reduced the liability to $3,758.22.

As to Item 4 under Assets, of the same date, the Chancellor had modified the Report of the Special Master to show assets of $8,335.43 rather than $9,905.63. This was due to the fact that the Special Master had counted as an asset $1,570.20 as cash, shown by Exhibit 17, but deposited in the bank on 3/5/43, the day fellowing the closing date upon which the Master was to report, or March 4, 1943.

Having adjusted both the assets and liabilities, in the foregoing manner, it required the subtraction of the $3,758.22 from the foregoing allowable assets of $8,335.43, which would in fact leave a balance of capital assets of $4,577.21 after the adjustment of the deposit aforesaid and the check aforesaid. Thus, under Item "4a", immediately following the above quoted portion of the findings and decree of the Chancellor, he said:

" ** * and that the net capital of the said Kelso Oil Company as of the aforesaid date amounted to $4,577.71, rather than the sum of $2,672.55, as found by the Special Master."

In response to Reference Item 6, the Special Master found that Winston H. Kelso had made no actual contribution to the capital of said partnership, as agreed by the partnership contract. He also reported that a deposit of $2,000 to the partnership account on March 3, 1943, the day before the partnership agreement (Exhibit No. 6) was an advancement made by Mildred Sayers, and in his Report he carried it as a liability of Mildred Sayers, as well as other additional advances to the partnership by her. (R. 611.)

The learned Chancellor sustained exceptions and modified this Report of the Special Master with respect to Item 6, having found and decreed that Winston H. Kelso contributed $2,000 to the capital of said partnership, and at the same time he found and decreed tht the $2,000 carried as a loan by Mildred Sayers to the partnership, reported by the Special Master as a liability of the partnership, was in fact not a liability but had been repaid to her, and that the said $2,000 should be considered as an asset of the partnership rather than a liability in the accounting between the two brothers. (R. 634.)

The Special Master reported under Item 9 that the net profits as of March 4, 1943, or profits available for distribution from that date to January 30, 1946, a period of approximately 35 months, amounted to $26,241.26. He also found that:

"In the absence of any provision in the partnership agreement concerning the adjustment between

the partners for salary of either partner; all withdrawals made by either partner or for which either partner is responsible are, for the purpose of these findings, charged to each partner's personal withdrawal account. Likewise, each partner's respective share in profits under this agreement are credited to his withdrawal account."

All of the above resulted in a showing that the capital account of the partnership reflects a balance due John N. Kelso of $12,573.49 and an overdraft of the capital account of Winston H. Kelso of $4,449.53, as reflected by the Report under Item 10, as of January 30, 1946. (R. 613, 614.)

In considering the exceptions, the learned Chancellor sustained exceptions to Item 9 so as to modify the Special Master's Report under it, and to credit Winston H. Kelso with a salary of $50 per week from March 4, 1943, the date of the partnership agreement, to May 1, 1944, or 15 months; and from May 1, 1944 to November 1, 1945, or 18 months, with a salary of $75 per week, and that from November 1, 1945 to January 30, 1946, the respective partners would be charged with their respective withdrawals as found by the Master. This finding and decree by the Master gave Winston H. Kelso a credit of salary totaling $9,050 for said periods, and deducting that amount from $26,241.26 found by the Special Master available for distribution to the partners after crediting and charging all withdrawals, as shown by the Report there remained only $17,191.26, all of which resulted in a finding and decree to the effect that the net profit to each partner during that period was $8,595.63, or one-half of the $17,191.26. (R. 635.)

The Report of the Special Master under Item 11 to the effect that Winston H. Kelso and Iola S. Kelso had perpetrated a fraud in fact against John N. Kelso was modified upon said exceptions, and decree entered accordingly, that no fraud in fact had been perpetrated, but that a fraud in law had been perpetrated, and that since there had been a perpetration of a fraud in law against John N. Kelso, he was entitled to interest on the amount found to be due him.

The Special Master in a "summary" to his Report, which we shall refer to as a recapitulation of the calculations revealed by his Report under separate assignments, shown at page 617 of the record, under a special heading "Computation of Amount Due Complainant", set forth the following:

*Computation of Amount Due Complainant*

| | | |
|---|---:|---:|
| O r i g i n a l Capital Contribution (Tenn. Code 7858(a) and findings under Items 4 & 4a) | | $ 2,672.55 |
| Add—Distributable share of profits (Tenn. Code 7860(1) and Exhibit G Hereto) | $13,120.63 | |
| Less: Withdrawals — John N. Kelso (Schedule D-1 hereto) | 3,219.69 | 9,900.94 |
| Net Value of Complainants Equity before Sale to Gettlefinger | | $12,573.49 |
| Deduct — Amount received from Gettlefinger | | 4,500.00 |
| Balance | | $ 8,073.49 |

Add: Reimbursement of $400. already charged Complainant under "Withdrawals" above (See also special comment regarding same hereafter)      400.00

Balance Due Complainant from Respondents   ·   $ 8,473.49

*Recapitulation*

Original capital contributions (Tenn. Code 7857(a) and Findings under Items 4 and 4a, as modified by the Chancellor    $ 4,577.21

Add—Distributable share of profits (Tenn. Code 7860(1) Exhibit G, as modified by Chancellor    $ 8,595.63

Less: Withdrawals John N. Kelso (Schedule D-1 hereto)    3,219.69    5,375.94

Net Value of Complainant's equity before selling to Gettlefinger    $ 9,953.15

Deduct:
Amount received from Gettlefinger    4,500.00

BALANCE    $ 5,453.15

Add:

Reimbursement of $400.00 charged
  complainant under "Withdraw-
  als", above (See also specific
  comment of Special Master) R.
  621                                            400.00

                                             ────────
                                             $ 5,853.15

Add: Interest allowed by Chan-
  cellor                                       1,908.13

                                             ────────
BALANCE plus interest, due Com-
  plainant from Respondents, per
  judgment of Chancellor                     $ 7,761.28

                                             ────────

█ It does appear that there is a mistake in the final calculation of $200, as set out in the Decree, fixing the salary of Winston H. Kelso, to which the Chancellor held him entitled, at $9,050. If the dates are correct in the Decree upon which this salary is based,—part of the time from March 4, 1943, to May 1, 1944, or 60 weeks, being at $50 per week, totaling $3,000, and the remainder from May 1, 1944, to November 1, 1945, or 78 weeks, being at $75 per week, totalling $5,850,—this salary allowance would appear to be $8,850 instead of $9,050, and would make a difference of $200, one-half of which, or $100, should have been added to the final dollar judgment, plus the interest thereon from the date of the filing of the bill, February 24, 1948; but no exceptions were taken by Complainant to the calculation and no Assignment of Error thereto, so it will stand as fixed in the Chancellor's Decree.

Without further reference to the mathematical calculation based on the Special Master's Report and the Chancellor's action thereon, we take up other Assignments of Error:

■■ Assignment of Error I challenges the right of the Chancellor under the facts of this case to order the reference. It is said that the reference is premature and improper because it involves mixed questions of law and facts, and that the law should have been determined by the Chancellor, and the Master instructed as to the applicable law.

If we concede that the pleadings show a determination of both law and fact to be made, it does not follow that the Chancellor must determine the applicable law before a factual accounting had been prepared. Appellants cite as authority for this Assignment, Section 596 of Gibson's Suits in Chancery, pp. 503-504. This Section is a short treatise of proper matters for reference by the Chancellor. The Chancellor should not refer questions of law alone or the determination of questions of law to the Master, but in the Section relied upon by appellants, it is said:

"* * * but a mixed question of law and fact may be referred".

This record indicates that the Chancellor referred no questions of law to the Master. They were reserved for his own adjudication, as shown by the reference to the Master and the final decree of the Chancellor. To this Court, the suit between brothers involving an accounting of their business over a period of some several years, furnishes a typical case of reference by the Chancellor.

This Assignment is overruled without further comment.

■ Assignment of Error II challenges the refusal of the Chancellor to hear proof after a Report on his first Order of Reference, which was completely set aside, and every item of the Reference re-referred to Special Master, with Item ''4a'' also included.

For the same reasons set out above, and upon the same authorities, this Assignment must be overruled. The Chancellor was imminently correct when giving consideration to the first Report of the Master, for then it was obvious that special auditor training would be necessary for a complete accounting report of the involved business, and too, the Master sought to be and was excused from further action on the Reference. It would have been a waste of time for the Chancellor to have, at that particular period in the hearing, made any effort to arrive at the rights of the parties. He was in much better position to do so upon exceptions properly filed, which course he pursued and which course we hold to be proper. Gibsons Suits in Chancery, 4th Ed., Sec. 597, p. 504; Advance Lumber Co. v. Moore, 126 Tenn. 313, 148 S. W. 212; White v. Cox, 5 Tenn. 214.

Assignment of Error IV is as follows:

''The Chancellor erred in holding the sum of $5,853.15 due the complainant, because, if the findings by the Chancellor were correct, the only change in amount due would be an adjustment of the Special Master's figures to reflect credit given Winston H. Kelso for one-half of salary withdrawals, which would leave a net amount due of $3,948.49, instead

694

of $8,473.49 as found by the Special Master, or $5,853.15 as found by the Chancellor."

The principal item is that of a deposit of the individual funds of John N. Kelso in a bank and credited to the partnership one day after the date of the partnership agreement. The respondents were in charge of the business of John N. Kelso at that time. He had been in the service. This entire deposit of $3,474.86 belonged to him as an individual, and though put into the partnership account, thereby appearing to be partnership funds, assets of the firm, that action did not change the individual title thereto in the accounting between the parties. Consequently, the Chancellor was entirely correct in modifying the report of the Master to reflect that situation and give the rightful party credit for that fund. It would have been extreme foolishness on the part of John N. Kelso to have permitted that amount of his individual money to go into the partnership assets and then value the total partnership assets at approximately $4,000, or $2,000 to each partner.

Under the first order of reference, all of which was set aside when the order of reference was renewed to a Special Master, the Master had found that—

"Winston H. Kelso did cheat and defraud complainant, John N. Kelso, and respondent, Iola S. Kelso, did actively participate in same." (R. 524.)

The Special Master, acting under the renewed order of reference to him, and reporting on Item 11, said:

"It is my opinion that Respondent, Winston H. Kelso did cheat and defraud Complainant John N. Kelso and that Respondent Iola S. Kelso did actively

participate and conspire with Winston H. Kelso in so doing.'' (R. 614.)

Each Master had referred to the particular evidence, records, etc., upon which their respective opinions that respondents had cheated John N. Kelso, were based.

In acting upon the exceptions to Item 11, the Learned Chancellor in modifying the Special Master's Report under Item 11, found and decreed:

"That the respondent, Winston H. Kelso and Iola A. Kelso, did perpetrate a fraud in law upon the complainant, John N. Kelso, in their dealings with the said complainant in the handling of said partnership affairs.'' (R. 635.)

Thus it will be seen that the Master, the Special Master, and the Chancellor, all found that the respondents were guilty of fraud in their dealings with John N. Kelso. The only difference in the Decree of the Chancellor and the Reports of the Masters, is the degree or kind of fraud,—whether a mere legal fraud or a factual fraud, —and upon a review of this record with the explanation of the respondents, we think it can be fairly inferred that the Chancellor based its findings that respondents were only guilty of legal fraud upon the actual or pretended ignorance of the respondents to properly keep the records reflecting the conduct of the business, both while Winston H. Kelso was the mere manager of the business for his brother, John N. Kelso, and while he conducted it after the partnership agreement was entered into. Be that as it may, unquestionably this record reveals an effort to cheat and defraud on the part of Winston H. Kelso and his wife, either deliberately or through ignorance.

If we are to give full credit to the testimony of Clyde B. Knable with respect to the activities of Iola S. Kelso and her demand that he make certain entries upon the general ledger, without attributing such action on her part to ignorance, there would be no escape from finding actual and factual fraud. It appears to this Court that the Chancellor, though finding that the complainant, John N. Kelso, was entitled to interest on the amount which was finally determined to be due him, after making the adjustments in the report of the Special Master, was extremely liberal in his dealings with respondents, and from this record he might have found that John N. Kelso was due a much larger amount.

We conclude, therefore, that all Assignments of Error which are leveled at the Special Master's Report, the modification thereof, and the Decree of the Chancellor thereon as to the mathematical calculations and findings as set forth in the Chancellor's Decree, must be and are accordingly overruled.

Finally, it is said in Assignment No. V that:

"The Chancellor erred in finding for the complainant in any amount, because the evidence shows that John N. Kelso sold his business with full knowledge, for an agreed price, which price was not set by respondents, and sold voluntarily. If, as he now says, he sold too low, he did so in his own right, without duress."

Appellants, respondents below, undertake to support this Assignment by the opinion in Long v. Range, 31 Tenn. App. 176, 213 S. W. (2d) 52, supported by the case of Bridges v. Robinson, 2 Tenn. Ch. 720, approved in

the case of Freeman v. Citizens National Bank, 167 Tenn. 399, 409, 70 S. W. (2d) 25.

In the case of Long v. Range, supra, a suit was instituted in the Circuit Court of Scott County upon a promissory note in the amount of $1,515 given for the balance due for a stock of merchandise invoicing somewhere between $4,515.58 and $4,315,58, the balance having been paid in cash. Defense was made that the stock of merchandise was padded with old, worthless and unsalable articles, and in that manner the plaintiff had perpetrated a fraud upon the makers of the note. The proof shows that both parties made an inventory of the stock of merchandise and that in so doing, each had an opportunity to see all the items making up the stock of merchandise. Their defense was denied, and at page 180 of the opinion in 31 Tenn. App., 213 S. W. (2d) at page 53, the Court said:

"It is apparent from defendants' plea and from their admissions appearing of record that they did not rely upon plaintiff's representations when the stock of merchandise was purchased by them, but that they relied upon the inventory and invoice made by themselves before the offer of sale was finally accepted, and if the old articles were added to the stock of merchandise by the plaintiff in the manner heretofore described before or during the taking of the inventory, defendants were bound to have seen them while invoicing the stock of goods."

In Bridges v. Robinson, supra, there was a charge that Robinson falsely represented a stock of groceries to be in sound, merchantable condition. Appellants' claim was denied, the Court saying:

"A false assertion of value upon the part of the seller, and highly colored terms of commendation, will not vitiate a contract. Misrepresentations, though false, will not be considered fraudulent where both parties have the means of information, so that by the exercise of ordinary diligence and prudence either may rely upon his own judgment. Such assertions are plainly matters of opinion, which it is folly to rely on."

In Freeman v. Citizens National Bank, supra [167 Tenn. 399, 70 S. W. (2d) 29], it is said:

"It is universally held that equity will not relieve against false representations in a case where both parties have equal knowledge of the matter. That is to say that one cannot rely on representations known by him to be false. Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded."

Neither of the above cases afford any comfort for appellants. Neither of the cases began with fraud on the part of an agent or servant in charge of the employer's merchandise and business as in the instant case. This record reveals that there was a thread of fraud running through the entire business and the conduct of the same almost from the time that Winston H. Kelso took charge of it as the employee of his brother, John N. Kelso. The business in question was first begun and operated by John N. Kelso. The declaration alleges that it was a successful business. He had a right to conduct his own business in any way he desired so long as he stayed within the law. He was inducted into the Armed Forces and his services were prolonged in the military effort

much longer than he had anticipated. When inducted into the service he employed his brother to manage this business, and after it was determined that his services would be prolonged, this partnership agreement was entered into, and at the suggestion of Winston H. Kelso, one Mildred Sayers was designated as a partner instead of Winston H. Kelso. The reason therefor is fully explained and reflects no particular credit on Winston H. Kelso. It is further alleged that the books were kept in such manner that John N. Kelso was unable to determine the value of the business from the records shown him, and that he entered into the alleged sale of his one-half interest in the business, believing and on the theory that regardless of the irregularity of the conduct of the business, his brother was dealing honestly with him, and because of these facts he accepted $4,500 for his half interest when soon thereafter Winston H. Kelso sold his half interest in the business for $15,000. Fraud was alleged in the conduct of the business and in the sale of the half interest induced by such fraud. An accounting was prayed for and under proper pleadings and orders of the Court, after a long period of time, the final report of the Special Master was made.

It is of no consequence that the Answer denied the fraud and undertook to show some reason why the interest of Winston H. Kelso, which was actually in the name of Mildred Sayers, was worth and sold for so much more than John N. Kelso had gotten for a like interest. It is of no use to further refer to the proof in this case, for we have pointed out where in both Reports of the Masters and the Decree of the Chancellor, it was found that fraud existed in connection with the several transactions and the conduct of the business. With such find-

ings, it would be improper for this Court to hold that John N. Kelso would have entered into any such arrangement and agreement, partnership and/or sale, had he known of the fraud perpetrated by respondents.

We have examined this record and have carefully studied the Reports of both Masters, and the Decree of the Chancellor. We have examined the exhibits which reflect the basis for the findings and the report of the Special Master attacked by the exceptions filed thereto, which same exhibits reflect the basis for the learned Chancellor's orders and decrees upon the exceptions, and we are well satisfied that there is no error whatsoever of which the original respondents can justly complain. It appears that the Master, the Special Master, and those sitting as Chancellor throughout this long period, were exceedingly patient in dealing with the parties and have certainly made an extremely tedious effort to arrive at a final conclusion extremely fair to respondents in the light of the whole record.

When fraud was practiced by one of the partners in charge of the business and discovered by the other one after he had sold his interest therein to his injury, an accounting was as proper as if the seller had sold to his partner. This position is substantiated by the Uniform Partnership Law, Section 7878, subsection (c), Williams Tennessee Code, Ann., and by the case of Evans v. Boggs, 35 Tenn. App. 354, 245 S. W. (2d) 641, and see Section 7877, Williams Tennessee Code, subsections (1) and (2).

The result is, therefore, that all Assignments of Error are overruled, the Decree of the Chancellor affirmed, and judgment is rendered in this Court for the original

amount of the Decree below, with interest thereon from the 31st day of July, 1953, the date of the original judgment, and all costs of this Court.

This case was heard before the Western Division of this Court. However, the Honorable John E. Swepston was appointed to the Supreme Court and did not participate in this Opinion.

Carney, J., concurs.