**Daniel R. HILLER, Jr., H. Richard Hiller, Jr., and Mary Elizabeth Hickman, Plaintiffs–Appellees,**

**v.**

**Lambert L. HAILEY and John T. Hailey, Individuals and d/b/a Hailey Brothers Partnership, Defendants–Appellants.**

Court of Appeals of Tennessee, Western Section, at Nashville.

Aug. 14, 1995.

Application for Permission to Appeal Denied by Supreme Court Dec. 18, 1995.

Christian S. Hofstetter, Nashville, for Appellants.

Gary S. Rubenstein of Schulman, LeRoy & Bennett, P.C., Nashville, for Appellees.

CRAWFORD, Judge.

Defendants, Lambert L. Hailey and John T. Hailey, d/b/a Hailey Brothers Partnership, appeal from the judgment of the chancery court in a nonjury case that awards plaintiffs [1], Daniel R. Hiller, Jr., H. Richard Hiller, Jr., and Mary Elizabeth Hickman, damages in the amount of Twenty Thousand Dollars ($20,000.00).

Plaintiffs' amended complaint alleges that plaintiffs entered into a contract with defendants to purchase a condominium in Nash-

ville, Tennessee, for a sale price of Seventy–Four Thousand Nine Hundred Dollars ($74,-900.00). They aver that prior to the execution of the contract, the defendants:

> [F]alsely and fraudulently answered questions of the plaintiffs stating to the plaintiffs that the basement of the condominium did not leak and that the condominium had not and would not suffer water damage. Specifically, the plaintiffs asked defendants if the basement leaked and whether the home had suffered water damage previously. Defendants responded specifically and negatively to these questions. As a result of plaintiffs' concerns the defendants signed an agreement warranting that the basement area of the condominium would be dry and free of moisture. Said contract was signed on December 26, 1986, and is attached hereto as Exhibit C.

The plaintiffs allege that the defendants made this misrepresentation fraudulently and with a malicious intent and with knowledge that the statements they made to the plaintiff were false.

In the alternative, the plaintiffs allege that the defendants negligently misrepresented the condition of the condominium to the plaintiffs and that the plaintiffs were justified in relying upon this information.

The complaint further avers that plaintiffs relied upon the representations of the defendants and completed the purchase of the condominium and that plaintiffs' father, Daniel Hiller, Sr., moved into the condominium and shortly thereafter determined that the basement did leak. The complaint avers that damages in the amount of Twenty Thousand Dollars ($20,000.00) were sustained by virtue of the reduction in value of the condominium.

The defendants' answer denies the material allegations of the complaint and denies that false or fraudulent misrepresentations were made. The answer further avers that the plaintiffs had full knowledge of the condition of the property at the time they entered into the contract to purchase same.

---

1. At the time of the purchase, Daniel Hiller, Jr., did not have a credit history sufficient to enable him to complete the purchase. Therefore, two of his relatives, H. Richard Hiller, Jr., and Mary Elizabeth Hickman, co-signed on the obligation. However, they are not directly involved in this litigation, and for simplicity's sake we will consider Daniel Hiller, Jr., the only plaintiff.

After a nonjury trial, the trial court, in its written finding of facts, found that the parties entered into a contract, that the contract "promised that the basement would be suitable to be remodeled," and that the defendants agreed to either remodel the basement or to pay plaintiffs Fifteen Thousand Nine Hundred Dollars ($15,900.00) less the amount defendants paid on plaintiffs' closing costs, and that "defendants as seller agreed to warrant the basement area as dry and free of moisture." The trial court further found that:

> Shortly after moving into the residence in question, plaintiff began to notice that the basement was leaking as a result of heavy rainfall in the area which was causing severe damage to the basement. Defendants made several attempts to correct the leaky conditions in order to protect the basement from further damage, but failed in their efforts to do so.

The trial court concluded from the written agreement that "it becomes evident that defendants made representations to plaintiff, Hiller, that were clearly fraudulent in nature with regard to the condition of the basement." The trial court then stated:

> It is also clear that defendants breached the undisputed December 23, 1986, contract by not providing a basement that was suitable to be remodeled as stated in the contract. The basement was not suitable because it leaked water which prevented it from being remodeled. By not acting according to the provisions of the contract, defendants breached an express agreement in the contract. In addition, it is clear from the writing of December 26, 1986, that defendants specifically warranted that the basement would be dry and free of moisture.

Defendants have appealed and present the following issues for review:

1. Whether the evidence preponderates against the trial court's award of damages based on fraudulent misrepresentation?

2. Whether the evidence preponderates against the trial court's award based on breach of contract?

Defendants first assert that the evidence preponderates against the trial court's finding that they made fraudulent misrepresentations. The only proof at trial concerning the negotiations for the purchase of the property came from plaintiff, Daniel Hiller, Jr., and his father, the occupant of the property, Daniel Hiller, Sr. They both specifically testified that they had no conversations with the defendants concerning the condition of the basement. Therefore, the finding of the court must be premised upon the language of the agreements signed by the defendants. The record reveals that the original contract of purchase is dated December 23, 1986, between plaintiffs and the defendants for a purchase price of Seventy–Four Thousand Nine Hundred Dollars ($74,900.00). The pertinent clause of the contract pertaining to this issue: "Miscellaneous condition—basement will be suitable to be remodeled." On December 26, 1986, plaintiff and defendants entered into a second agreement which states as follows:

> This Agreement dated 26th December 1986, between Hailey Brothers Investors (Seller) and Daniel R. Hiller, Jr. (Buyer) refers to lot 11A Brentwood Meadows, Nashville, Tennessee.
>
> The Seller agrees to remodel the basement of said unit according to the specifications provided by the Buyer. The Seller will pay to the Buyer the sum of Fifteen Thousand Nine Hundred Dollars and No Cents ($15,900) less the amount Seller pays for the Buyer's closing costs as Sellers total obligation. This amount will be paid at closing of the sale on said unit.
>
> Buyer will assume all responsibilities, costs and liabilities in the remodeling of the basement area. Seller does warrant this area is dry and free of moisture.
>
> 26th Day of December 1986.

Although plaintiffs had taken the contrary position in discovery proceedings, at the time of trial plaintiff and his father testified that they viewed the property on several occasions prior to the execution of the contract, and that on all of the occasions the basement was dry and free of moisture. There is absolutely no proof in the record that the

defendant knew or had reason to know that the basement area was anything but dry and free of moisture at the time they so warranted.

In *Williams v. Spinks,* 7 Tenn.App. 488 (1928), the Court said:

The party alleging fraud takes upon himself the burden of proving every necessary and material element of fraud and fraud will not be presumed from a showing merely that a motive or intent to perpetrate the same existed.

\* \* \* \* \* \*

The general rule is that the evidence to be sufficient to establish fraud should prove a state of facts which is not fairly or reasonably reconcilable with fair dealing and honesty of purpose, and which would lead a reasonable man to the conclusion that fraud in fact existed.

*Id.* at 494.

In *Bevins v. Livesay,* 32 Tenn.App. 1, 221 S.W.2d 106 (1949), the Court said:

In *Hamilton v. Gilbraith* [*Galbraith* ], 15 Tenn.App. 158, it was said:

The general principles applicable to cases of fraudulent representation are well settled. Fraud is never presumed; and where it is alleged the facts sustaining it must be clearly made out. The representation must be in regard to material fact, must be false and must be acted upon by the other party in ignorance of its falsity, and with a reasonable belief that it was true. *See also Long v. Range,* [31] Tenn.App. [176,] 213 S.W.2d 52, [1948] opinion by Judge Howard.

*Id.* at 109.

In the case at bar we must respectfully disagree with the learned chancellor for we fail to find that the plaintiffs satisfied their burden of proof that fraudulent misrepresentations were made.

We have previously related the trial court's findings regarding breach of contract and in the second issue, the defendants assert that the trial court erred in awarding damages based on contract claims. They further contend that the proof establishes that plaintiffs sustained no damages.

Defendants argue that plaintiffs did not allege breach of contract in their complaint, and that plaintiffs' attorney specifically stated to the court in closing statement that the case was not a breach of contract case. Clearly, the issues joined by the pleadings concerned only misrepresentation, and there was no allegation of a breach of contract. Plaintiffs apparently relied upon the representations made in the contract as being the fraudulent misrepresentation and the contract and the subsequent amendment thereto were introduced into evidence. Tenn. R.Civ.P. 15.02 provides:

**Rule 15.02 Amendments to Conform to the Evidence**

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. Provided, however, amendment after verdict so as to increase the amount sued for in the action shall not be permitted. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice that party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Defendants insist that they never expressly or impliedly consented to the trial of issues concerning breach of contract and that therefore the trial court erred in making such a finding based on the pleadings in this case. This presents a rather close question, however, because the proof introduced could serve, of course, the dual purpose. In *Zack Cheek Builders v. McLeod,* 597 S.W.2d 888

(Tenn.1980), the Supreme Court interpreted the rule's meaning for unpleaded issues tried by implied consent:

> [T]he Rule itself abrogates the time factor by providing that "failure to so amend does not affect the result of the trial of these issues." Because of this provision, "the timing of the motion to conform is of little moment." Wright & Miller, [Federal Practice and Procedure] § 1494 at 475 [1971]. Moreover,
>
> > ... Rule 15(b) does not require that a conforming amendment be made and there is no penalty for failing to do so. The rule clearly states that the absence of a formal amendment or a request for leave to amend 'does not affect the result of the trial' of those issues actually litigated. *Id.*, § 1493 at 460–61.
>
> *See also* [3] Moore, [Federal Practice], 15.13[2] at 168–170 [2d ed. 1978], noting that "[i]n effect ... the parties may, by express consent, or by the introduction of evidence without objection, amend the pleadings at will."

Thus, it is clear that Rule 15.02 seeks to place substance over form, and the real question before us is not whether the amendment was timely made, but whether or not the parties actually tried the issue delineated by the amendment. In short, the ultimate inquiry is whether there was implied consent from all parties in this case to try the issues of negligent misrepresentation, with the concomitant defense of contributory negligence.

Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby. A succinct statement of this rule appears in *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1086 (2d Cir.1977), where it said that:

> In a motion under rule 15(b) to amend the complaint to conform to the proof, the most important question is whether the new issues were tried by the parties' express or implied consent and whether the defendant "would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory."

*See also Saalfrank v. O'Daniel,* 533 F.2d 325, 330 (6th Cir.1976). The determination of whether there was implied consent rests in the discretion of the trial judge, whose determination can be reversed only upon a finding of abuse. *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 478, fn. 370 (D.C.Cir.1976).

Because of the proof problems at trial, the commentators warn that:

> Implied consent ... is much more difficult to establish (than express consent) and seems to depend on whether the parties recognized that an issue not presented by the pleadings entered the case at trial. A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. Thus, consent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend himself produced evidence bearing on the new issue. (Parenthetical insert added.) Wright & Miller, *supra*, § 1493 at 462–63.

*Zack Cheek Builders,* 597 S.W.2d at 890–91.

■ We do not take lightly the Court's warning regarding the difficulty of finding implied consent. Substantial evidence bearing on the issue of breach of contract was introduced by plaintiffs' counsel because the alleged misrepresentations were also covenants and formed a part of the contract. Plaintiffs framed their case on defendants' *promise* to do what they did not *intend* to do when they should have framed their action on defendants' *promise* to do something which defendants *did not do*. As previously noted, the complaint was not premised on breach of contract and plaintiffs' counsel explicitly disclaimed such an action. Admittedly, the proof adduced at trial was relevant to the issues drawn and also could be relevant

to a breach of contract action. In *Ray v. The Kroger Co.*, No. 83–323–II (Tenn.App.M.S. June 26, 1984) the Court noted that there was evidence in the record relevant to the issues of strict liability, and evidence which was also relevant to the express allegations of negligence shown in the complaint. In holding that strict liability was not an issue to be submitted to the jury, the Court said:

> Trial of an issue by consent is not shown by presentation of evidence which is relevant to an established issue and also would be relevant to an unexpressed issue.

*Id.* at 10.

In the case before us, the record establishes that there simply was no notice to the defendants that plaintiffs were proceeding against them for breach of contract. Accordingly, we find that the issue of breach of contract was not tried with the implied consent of the defendants.

Although in our view the state of the record does not allow recovery for plaintiffs, we will comment on the issue of damages raised by appellants. The purchase price in the December 23, 1986, contract was Seventy–Four Thousand Nine Hundred Dollars ($74,900), and the contract was amended December 26, 1986, to provide that the defendants would finish the basement on the property, all for the same sale price. Alternatively, defendants agreed to credit plaintiffs for the amount needed to remodel the basement. In either scenario, the purchase price of the property with a remodeled basement was Seventy–Four Thousand Nine Hundred Dollars ($74,900).

The proof established without controversy that after the contract was signed on December 23, 1986, and the amendment thereto on December 26, 1986, plaintiff's father moved into the property about January 1, 1987. He occupied the property and paid rent pending the closing of the sale, which occurred in late March of 1987. The chancellor found that shortly after moving into the residence, plaintiff began to notice the leaking as a result of heavy rainfall. The record reflects that this occurred prior to the closing.

Plaintiff, Daniel Hiller, Jr., testified that at the time they first noticed the leaking base-ment, the value of the property was Seventy–Thousand Dollars ($70,000). They also introduced into evidence an estimate in connection with a HUD appraisal that the property had a value of Seventy–Eight Thousand Five Hundred Dollars ($78,500), but this appraisal clearly shows on its face without any supporting testimony that it was an *estimated* reasonable value. As previously noted, the contract sale price, including a remodeled basement, is Seventy–Four Thousand Nine Hundred Dollars ($74,900). In a land sale transaction, the contract price is strong evidence of what would have been the value of the land had it been as represented. *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn.App.1976). In the case before us, the contract price is the only credible proof of the value of the property as represented. Plaintiff testified unequivocally that the value of the property at the time the leaks were discovered was Seventy Thousand Dollars ($70,000.00).

In a breach of contract action, the injured party is only entitled to be put in the same position he would have been in had the contract been performed, and he should not profit by the defendant's breach. *Hennessee v. Wood Group Enterprises, Inc.*, 816 S.W.2d 35, 37 (Tenn.App.1991). An award to plaintiff of Four Thousand Nine Hundred Dollars ($4,900), the difference between Seventy Thousand Dollars ($70,000) and Seventy–Four Thousand Nine Hundred ($74,900), would accomplish that purpose. The award made by the chancellor would allow plaintiff to profit by the defendants' breach. *Hennessee*, 816 S.W.2d at 37. Accordingly, had plaintiffs proved their case, their maximum damages would be in the amount of Four Thousand Nine Hundred Dollars ($4,900.00).

The judgment of the trial court is reversed, and costs of appeal are assessed against appellees. The case is remanded to the trial court for such further proceedings as may be necessary.

TODD, P.J. (M.S.), and CANTRELL, J., concur.