[No. 19309.   Department One.   January 5, 1926.]

BRIDGEPORT STATE BANK *et al., Appellants,* v. UNION WAREHOUSE & MILLING COMPANY *et al., Defendants,* R. E. DARLING *et al., Respondents.*[1]

[1] GUARANTY (12)—DISCHARGE—EXTENSION OR PERFORMANCE—SUBSTITUTION OF NEW GUARANTY—QUESTION FOR JURY. A guarantor is released by a subsequent guaranty given to take the place of the first one, notwithstanding a provision in the first providing that it was to remain in force until notice was given.

[2] SAME (12). Whether a guaranty to a bank was released by the acceptance of a new one is a question for the jury, where the evidence was conflicting, the records of the bank show that it was duly authorized, and the bank retained the new guaranty.

[3] SAME (12)—EVIDENCE OF DISCHARGE BY SUBSTITUTION—ADMISSIBILITY. Upon an issue as to whether a new guaranty was accepted in lieu of another, the documents are admissible, showing on their face that the notes issued were covered by the later guaranty.

Appeal from a judgment of the superior court for Douglas county, Jeffers, J., entered March 17, 1925, upon the verdict of a jury in favor of defendants in an action on contract. Affirmed.

*Dalbert E. Twitchell,* for appellants.

*Hanna, Miller & Hanna* and *Philip D. Macbride,* for respondents.

ASKREN, J.—This action was instituted to recover upon a guaranty signed by defendants. A jury trial resulted in a verdict in their favor. Motions for judgment notwithstanding the verdict and new trial were denied, and plaintiffs appeal.

Appellants sued on a guaranty given to the Bridgeport State Bank to guarantee liabilities of the Union Warehouse & Milling Company to the extent of $25,000.

[1]Reported in 242 Pac. 13.

The important part of the guaranty, so far as this appeal is concerned, is contained in the following words:

". . . and that this shall be a continuing guarantee, and shall cover all the liabilities (according to the terms and conditions of promissory notes forms used) which the customer may incur until the undersigned, or the executors and administrators of the undersigned, shall have given the bank notice in writing to make no further advances on the security of this guarantee.

"And it is agreed that this guarantee shall be good notwithstanding any change or changes in the name of the customer, or any change or changes in the membership of the customer's firm by death or retirement of one or more of the partners, or by the introduction of one or more other parties.

"Dated at Bridgeport, this 3rd day of August, A. D. 1922."

To the suit to recover the amounts of several notes alleged to be covered by this guaranty, the respondents interposed several affirmative defenses, one of which was that the guaranty sued upon had been superseded by a later contract of guaranty. At the trial, the evidence of respondents was to the effect that, in the latter part of 1916, there was a request for a new guaranty to take the place of the one sued on, which had been executed in 1912. Five witnesses testified that a new guaranty for $100,000 was requested by the bank, and that it was understood that it was to take the place of the $25,000 guaranty. One of respondents testified that, when the 1917 guaranty was prepared, he took it to the bank and requested the return of the 1912 guaranty, but was told by one of the officials of the bank that it could not be released until the board had acted upon it. Respondents gave several notes to the bank thereafter, all of which contained a notation that they were secured

by the $100,000 guaranty of 1917, and in none of them was any reference made to the 1912 guaranty. There was also offered in evidence records of the minutes of the meetings of the directors of the bank in which it is shown that the cashier called their attention to the 1912 guaranty, and he was instructed that, as soon as a new guaranty was brought in, the rate of interest charged to the milling company might be reduced. The record of one of the meetings, being that of January 9, 1916, reads:

"The cashier again brought up the matter of mill-paper secured by old guaranty still drawing twelve per cent interest. He was advised that he could reduce the rate when a satisfactory guaranty was delivered to the bank in lieu of one now held. Cashier then stated that he had told Klass of the Union Warehouse and Milling Company December 30, 1916, that, if they would bring in a proper guaranty within sixty days from that date, he would make any paper drawing ten per cent from December 30th, 1916, in place of the old notes now held, and asked that this agreement be ratified. This was done."

There was also evidence showing that, shortly after the 1917 guaranty was received by the bank, the rate of interest was reduced.

Appellants offered evidence tending to show that the interest rate to all the bank's customers was reduced at about the time the reduction was made to the milling company; that the bank did not take the 1917 guaranty in place of the 1912 guaranty, but simply took it as an additional guaranty.

[1] Appellant now urges that, since the 1912 guaranty provided by its express terms that it was to continue in force until written notice was given to make no further advances, the failure to give a written notice keeps the 1912 guaranty in full force and effect. But the purpose of this provision of the guaranty was

merely to provide protection to the bank against oral notices not to make further advances, and could not have been intended to prevent the bank from accepting a new guaranty in place of the old one. There can be no question of the right of the bank to accept a new guaranty in lieu of the old one, and that such action would discharge the liability under the old guaranty.

The rule is stated in 28 C. J. 992:

"The guarantor may be released from liability by a subsequent agreement to that effect with the guarantee, provided such release is a valid one, and is based upon a sufficient consideration."

[2] It is admitted that the 1917 guaranty was received and kept by the bank. The question of whether it was received by the bank in lieu of the 1912 guaranty was a question of fact to be determined by the jury. There was substantial evidence upon this question to justify the jury in making its finding. The court did not err, therefore, in refusing to grant judgment notwithstanding the verdict. *Lydon v. Exchange National Bank,* 134 Wash. 188, 235 Pac. 37.

[3] It is urged that the court erred in admitting over objection certain exhibits offered by respondents. These exhibits were the 1917 guaranty, and certain notes issued thereafter which contained the statement heretofore referred to that the notes were secured by the $100,000 guaranty of 1917.

The issue being as to whether the 1917 guaranty was accepted in lieu of the former guaranty, the new guaranty or any notes issued thereafter, which showed upon their face that they were covered by the later guaranty, would be admissible as evidence upon this question, their weight, of course, being for the jury to determine. The issue being presented to the jury by instructions unexcepted to, it must be assumed that the jury prop-

erly decided the question of the substitution of the guaranties.

There is nothing in the record to indicate any abuse of discretion in refusing a new trial.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, and FULLERTON, JJ., concur.