**FIRST AMERICAN NATIONAL BANK OF NASHVILLE, Tennessee, Plaintiff-Appellant,**

v.

**Joseph HALL, Walter B. White, Kenneth Ray Gregory, Joseph D. Loftis, Warren B. Loftis, Charles V. Gray, Rachel Gray, d.b.a. Whitehall Vending Company, a partnership, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

Nov. 21, 1978.

Certiorari Denied by Supreme Court April 2, 1979.

Joe C. Peel, King & Ballow, Nashville, for plaintiff-appellant.

Howard M. Taradash, Nashville, for defendant-appellee Hall.

Collins, Hedgepath & Lee, Nashville, for defendants-appellees Gregory and Warren B. Loftis.

James L. Curtis, Nashville, for defendant-appellee White.

MATHERNE, Judge.

The issue on appeal is whether, under the facts, certain defendants are liable to the plaintiff bank under two guaranty agreements whereby they guaranteed all debts of Whitehall Vending Company owing to the plaintiff, or whether only the defendants

Gray are liable to the plaintiff under an agreement whereby the Grays assumed the indebtedness that Whitehall Vending Company owed the plaintiff. For an understanding of the rulings of the chancellor and the issues on appeal, it is necessary to review rather complicated factual situations existing between the parties from 1967 to 1974.

## I.

In 1963 the defendant Joseph Hall, a career military man, began a small vending machine operation as a sole proprietorship. Hall was assigned to overseas duty, and arrangements were made whereby the defendant Walter B. White, assisted by the defendant Kenneth Ray Gregory, operated the business while Hall was absent. Upon Hall's return White and Gregory were made partners in the business as compensation for their work, and the business was known as Whitehall Vending Company. On March 21, 1967, Hall, White and Gregory signed a guaranty agreement whereby they individually guaranteed to the plaintiff bank that they would pay all debts owing to the bank by Whitehall Vending Company.

By instrument dated May 31, 1967, Gregory sold his interest in the partnership to the defendant Warren B. Loftis for a recited consideration of $1,350. The instrument provided that the buyer assumed all outstanding debts of the company for which the seller would be liable and that the partnership consisting of Gregory, White and Hall "is hereby dissolved." The instrument is signed by Gregory, Loftis, White and Hall. As best we can determine from the record, the company paid Gregory the consideration for the sale of his interest. Loftis testified that he did not repay that sum to the company and that it was his understanding that he was to work full time for the company for three years and he would then become a partner. From about the time of the sale to Loftis until about 1969 the defendant Joseph Loftis, the brother of Warren B. Loftis, worked full-time for the company. Warren B. Loftis then worked full-time for the company until March 1971 when he found other employment and was no longer actively associated with the company.

From March 1967 through April 1969, Whitehall Vending Company purchased various vending machines from Hermitage Music Company. These purchases were accomplished under nine different Sale Contract and Security Agreements signed and dated as follows: March 27, 1967, signed by Hall, White and Gregory; August 16, 1968, signed by Hall; June 4, 1968, signed by Hall; December 20, 1968, signed by Hall; April 25, 1969, signed by Hall and White; July 16, 1969, signed by Hall and Warren B. Loftis; October 23, 1969, signed by Hall and Warren B. Loftis; and April 25, 1969, signed by Hall and White.

On July 1, 1970, a Sale Contract and Security Agreement was signed by Hall, White and Warren B. Loftis for Whitehall Vending Company in the amount of $38,-462.40 which was a consolidation of the nine separate contracts listed above into one obligation. Each of these ten contracts state that the seller will transfer or assign the debt to the plaintiff bank. Also on July 1, 1970, Hall, White and Warren B. Loftis signed a guaranty agreement whereby they individually guaranteed the plaintiff bank that they would pay any debts owed it by Whitehall Vending Company.

Whitehall Vending Company was apparently unable to meet its obligation to the plaintiff bank, and on March 6, 1972 Hall signed on behalf of the company a revision agreement revising the schedule of payments of the July 1, 1970 contract, which revision agreement the bank accepted.

At some time the defendant Charles Gray became a full-time employee of Whitehall Vending Company. Hall and White agreed to sell the company to Gray and his wife, the defendant Rachel C. Gray. Hall and the Grays went to the plaintiff bank on May 31, 1974 and a bank official had an assumption of indebtedness typed on the

back of the revision agreement by which the defendants Gray assumed "full responsibility for the unpaid balance of $36,921.26 remaining unpaid on this contract as of this date." There was no bill of sale or transfer of property by the sellers to the buyers. The Grays took over the business and operated it as their own.

The Grays were unable to meet the payments as they fell due under the revision agreement. Charles Gray and Hall went to the bank and signed on behalf of Whitehall Vending Company a second revision agreement dated July 16, 1974 which lowered the monthly payments as required by the first revision agreement. Hall testified that his signature was on the second revision agreement but that he did not remember signing it.

The Grays defaulted on the second revision agreement and the bank foreclosed and sold the vending machines. A deficiency remained and the bank sued Hall, White, Gregory, Warren B. Loftis, Joseph Loftis, Charles Gray and Rachel C. Gray as partners liable upon the contract and security agreement dated July 1, 1970. The bank amended its complaint to sue Hall, White, Gregory and Warren B. Loftis on the guaranty agreements dated March 21, 1967 and July 1, 1970.

The defendant Hall and the defendants Gray filed cross-claims against each other; however, these cross-claims were voluntarily non-suited prior to the trial. The plaintiff bank also took voluntary non-suits as to Joseph Loftis, Charles Gray and Rachel Gray.

The chancellor held that the defendant Kenneth Ray Gregory was released from the guaranty agreement he executed on March 21, 1967 because the guaranty agreement signed by Hall, White and Warren B. Loftis on July 1, 1970 amounted to a novation of the prior guaranty agreement signed by Hall, White and Gregory. The chancellor further held that the assumption of the indebtedness by the Grays on May 31, 1974 was a novation of both the second guaranty agreement signed by Hall, White and Warren B. Loftis on July 1, 1970 and the Sale Contract and Security Agreement of the same date, and he dismissed Hall, White and Loftis as defendants. The chancellor held that the Grays were liable to the bank under their May 31, 1974 assumption of the indebtedness, but since the bank had taken a voluntary nonsuit as to those defendants, the bank could not prevail in this lawsuit. The chancellor dismissed the bank's lawsuit at its cost.

The bank appeals on two basic issues: (1) that the second guaranty agreement signed by Hall, White and Warren B. Loftis did not amount to a novation of the first guaranty agreement and thereby release Kenneth Ray Gregory; (2) that the assumption of indebtedness by the Grays did not, under the facts, amount to a novation of the Sale Contract and Security Agreement or the guaranty agreement signed by Hall, White and Warren B. Loftis on July 1, 1970.

## II.

"A later guaranty releases the guarantor on a former one only if it appears that the later one was accepted as a substitute for the earlier." 38 C.J.S. Guaranty § 80, p. 1249. Whether the later guaranty was accepted as a substitute for the former is a question of fact, and the requirement in the first guaranty that the guarantor can be released from liability thereunder only by written notice to the creditor does not prevent a release of the first guaranty where it appears the later guaranty was given and accepted as a replacement of the first guaranty. *Bridgeport State Bank et al. v. Union Warehouse & Milling Co. et al.* (1926), 137 Wash. 190, 242 P. 13.

There is a noticeable absence of proof on the part of all the parties on the factual issue to be determined. Kenneth Ray Gregory did not testify. The bank did not produce Wilson Bracy, an apparent official of Hermitage Music Company who wit-

nessed the signatures to the second guaranty. The bank offered no explanation as to why it required Hall and White to sign the second guaranty along with the new partner Loftis, but did not require Gregory to sign that guaranty. Hall, White and Loftis understood that Gregory had left the business May 31, 1967 when he sold his interest to Loftis. The chancellor found that so far as Gregory was concerned the parties intended that the second guaranty replace the first and that the July 1, 1970 Sale Contract and Purchase Agreement replace the nine prior contracts. We find that the evidence does not preponderate against that holding. We hold that Gregory is released from his obligations under the 1967 guaranty agreement and that he was never obligated under the July 1, 1970 Sales Contract and Security Agreement upon which the bank sues.

The chancellor further held that Hall, White and Warren B. Loftis were released from the July 1, 1970 guaranty agreement and the July 1, 1970 Sales Contract and Security Agreement because all parties, including the bank, treated the assumption by the Grays of the firm's indebtedness to the bank as a release of Hall, White and Loftis from all liability under those instruments. We do not agree with this holding.

■ The guaranty under consideration is a continuing and absolute guaranty to the bank for all amounts owing the bank by Whitehall Vending Company. A guarantor in a commercial transaction is held to the full extent of his engagement, and the terms of the guaranty will be construed as strongly against the guarantor as the sense will admit. *Farmers-Peoples Bank v. Clemmer* (Tenn.1975) 519 S.W.2d 801.

■ An absolute and continuing guaranty may be cancelled or terminated only as stated in the guaranty or by the acceptance of a new guaranty as a replacement for the prior one. The guaranty under consideration has the following provision for the termination of the liability of any guarantor:

This obligation is joint and several and binds each of the Guarantors and their personal representatives as if signed by each of said Guarantors alone, and shall remain in full force and effect until a notice in writing, signed by the Guarantor seeking to be released, or by his personal representative, shall be delivered to an Executive Officer of said Bank at is [its] principal place of business, in Nashville, Tennessee, and this obligation shall then continue in full force and effect as to each such Guarantor, until all obligations of every kind, then owing by the Guaranteed (whether due or not due), to said Bank shall have been paid and discharged in full, together with all interest, costs, expenses and attorneys' fees as hereinabove provided.

The notice as required was not given by any of the three guarantors.

■ The guarantors argue that the assumption of the indebtedness by the defendants Gray relieved them of all liability on their guaranty. The guaranty agreement provides that guarantors agree:

To waive demand, notice and protest of each and every item for which said Guaranteed [Whitehall Vending Company] may be liable to said Bank, either now or hereafter, and to waive diligence on the part of said Bank in making collection against the Guaranteed and/or against any other for whom the Guaranteed may be secondarily liable, and agrees that all obligations of the Guaranteed and any other or others for whom the Guaranteed may be secondarily liable may be renewed or extended in whole or in part from time to time, or at any time by said Bank without notice to the undersigned Guarantors, and without affecting the liability of the undersigned Guarantors hereunder. It is further specifically agreed that each of the Guarantors shall have no right to make any defense to any obligation for which the Guaranteed may be liable to said bank, which the Guaranteed could not make in person.

Even though Hermitage Music Company assigned the contract to the bank with recourse and even though the assumption of that debt by the Grays may have rendered the Grays liable thereon, the terms of the guaranty place full liability on the guarantors. We conclude that Hall, White and Warren B. Loftis are liable to the bank on the guaranty agreement dated July 1, 1970. We also conclude that Hall, White and Warren B. Loftis are liable to the bank under the Sale Contract and Security Agreement dated July 1, 1970. There is no proof that the bank accepted the Grays as the only parties liable under that instrument. The assumption of that indebtedness by the Grays as a consideration for the purchase of the business does not, standing alone, amount to a release of Hall, White and Warren B. Loftis from their obligation thereunder to the bank. We make no ruling as to the liability of the Grays to Hall, White and Warren B. Loftis under the Grays' assumption of the indebtedness because the Grays are not before the Court. Neither do we rule on the liability of Hall, White and Warren B. Loftis each to the others under that contract. The parties are free to litigate those matters because the subject was not settled in the trial court and it is not before this Court.

The chancellor is affirmed on his dismissal of Gregory from this lawsuit. The chancellor is reversed in his ruling that Hall, White and Warren B. Loftis are not liable under their guaranty dated July 1, 1970 and the Sale Contract and Security Agreement of the same date. This lawsuit is remanded to the trial court for a determination of the amount of that liability. The above holding disposes of all assignments of error filed by the plaintiff bank.

The cost in this Court is adjudged one-half against the appellants and one-half against the appellees.

SUMMERS, J., and TATUM, Special Judge, concur.