ALTON BANKING & TRUST COMPANY, Plaintiff-Appellee, *v.* CHARLES W. SCHWEITZER *et al.*, Defendants-Appellants.

Fifth District   No. 83—192

Opinion filed February 8, 1984.

Ralph M. Friederich, of Peper, Martin, Jensen, Maichel & Hetlage, of St. Louis, Missouri, for appellant Charles W. Schweitzer.

Christopher B. Hunter, of Farrell, Heil & Long, P.C., of Godfrey, for appellant Fred Kettlekamp.

Paul E. Riley, of Mudge, Riley & Lucco, of Edwardsville, for appellants Robert W. Schwartz and Myrna P. Lewis.

John C. Webster, of Williamson, Webster & Blaine, of Alton, for appellant Jerry Todd.

Steven N. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Defendants-Appellants, Charles W. Schweitzer, Robert W. Schwartz, Myrna P. Lewis, Fred Kettlekamp, and Jerry Todd, appeal from the judgment of the circuit court of Madison County which found them jointly and severally liable to Alton Banking and Trust Company as guarantors for loans to Metals Recycling Corporation on which that corporation defaulted. In addition to the principal amount of $114,792.41, the court ordered appellants to pay $43,839.25 in accrued interest, $17,000 in attorney fees and $428.90 in costs. A sixth defendant, Richard Laughlin, does not appeal.

In January 1978, Schweitzer, Schwartz, Lewis, Kettlekamp, Todd and Laughlin purchased stock in Metals Recycling Corporation (Metals Recycling). Laughlin and Eugene St. Cin, who later purchased

Todd's shares, asked the six investors to sign a guaranty to insure the payment of all of Metals Recycling's debts to Alton Banking and Trust. In consideration of the guaranty signed by the six investors, on January 26, 1978, the bank loaned the corporation $100,000 at 10% interest. The bank's ledger shows that the $100,000 debt was renewed several times with increased interest rates.

The guaranty which all six investors signed on January 23, 1978, provided that they would guarantee "all indebtedness *** now or hereafter to become due" and that "indebtedness" was used in its "broadest possible sense to cover any and all liability now or hereafter incurred in any possible manner whatsoever, direct or contingent" to the Alton Bank. The guarantors' liability was not to be affected by extensions granted to the corporation, acts or omissions of the bank relative to the debt, or "any compositions, settlements or substitutions" the bank might make respecting the debt. No dollar amount was placed on the liability of the guarantors; the guaranty covered "the ultimate remaining balance due." It was to remain effective until the full liability was paid. In addition to the principal, the guaranty covered interest and all costs reasonably incurred, including "attorneys' fees involved in making collection" against the debtors and guarantors. A guarantor could terminate his liability for future indebtedness by giving the bank written notice of his intention to withdraw as a guarantor, but he remained liable for debts existing at the time of his written notice. No guarantor ever served written notice of withdrawal on the bank.

By September 1980, the corporation had reduced its debt to $85,000. The bank and corporation negotiated a note for $85,000 due in 1983 bearing an interest rate of 17.75%. This note was specially prepared by Chris Johnson, an officer of the bank. At the bottom of the note was a single guaranty paragraph:

> "For value received, the undersigned do hereby jointly and severally guarantee the payment of the within note and interest at maturity, or at any time thereafter, with eight per cent interest per annum from maturity until paid, upon the same terms, conditions, and covenants, including same power-of-attorney, as the makers hereof."

Johnson asked James Hair, chief financial manager of the corporation, to have the six guarantors sign the new note. Johnson said he would contact Todd because Hair did not know him, but no one ever told Todd about the 1980 note. The other five guarantors signed the new note and returned it to Hair, who gave it to the bank. Although most of those who signed the second note recalled that Hair's cover letter

led them to believe the 1980 guaranty replaced the 1978 guaranty, the letter itself did not mention any guaranty. The copy sent to Kettlekamp spoke only of notes:

"Please find enclosed the note *** that we discussed on the telephone. As I indicated, this replaces the $100,000.00 that Metals Recycling Corporation had previously.

After you sign the note, return it to me, as I need one additional signature ***."

On January 12, 1981, the corporation signed a note for $114,792.41 at 22.5% interest with a maturity date of March 19, 1981. It encompassed the $85,000 debt on which no payments had been made and $18,045.30 representing overdrafts on the corporation's checking accounts and interest due. The note for $85,000 was marked "Paid by renewal" on January 19, 1981. Metals Recycling defaulted on the January 12 note. On May 11, 1981, the bank filed suit against Schweitzer, Schwartz, Kettlekamp, Laughlin, Lewis, and Todd under the terms of the 1978 guaranty which made them liable for all indebtedness of Metals Recycling.

When Todd did not answer the bank's complaint or appear, the court entered a default judgment against him. The default was later set aside and Todd testified in his own defense that when he sold his shares to St. Cin he had talked with the bank about substituting St. Cin in his place as a guarantor. The 1978 guaranty was not modified to substitute St. Cin. Todd never gave the bank written notice that he was withdrawing as a guarantor. He also testified that after suit had been filed a bank officer had assured him that the bank would not "pursue" him. After a bench trial, the court found in favor of the bank and against all guarantors, including Todd.

A flurry of post-trial motions followed. All defendants but Laughlin joined in a motion to vacate or amend the judgment. The motion alleged that the first guaranty merged into the second and that the material alteration in the obligation secured by the second guaranty discharged the guarantors from any liability to the bank. The defendants also objected that the interest had been improperly calculated and the award of attorney fees was excessive. The motion was denied. Schweitzer, Schwartz, Kettlekamp and Lewis sought to stay enforcement of the judgment by posting an appeal bond. The motion was denied. Kettlekamp and Laughlin stipulated that Laughlin agreed on April 28, 1981, to indemnify Kettlekamp fully for his liability as a guarantor. The court ordered Laughlin to indemnify Kettlekamp according to their agreement. We granted leave to file a late notice of appeal. Schweitzer, Schwartz, Lewis, Kettlekamp and Todd

appealed from the judgment of the trial court and the denial of the post-trial motion.

We are asked to decide whether (1) the note and guaranty of September 17, 1980, replaced the guaranty of January 23, 1978; (2) the calculation of interest is correct; and (3) the award of $17,000 in attorney fees is an abuse of the court's discretion. We find the second guaranty did not replace the first and affirm the trial court's judgment as to the liability of all six of the original guarantors. We remand the case, however, for further proceedings with regard to awards of attorney fees and interest.

■■ ■ The appellants argue that the 1978 guaranty merged into the 1980 note and guaranty. We believe reliance on the doctrine of merger in the present case is inappropriate because merger is generally limited to cases in which a contract for the sale of land is fulfilled by delivery of a deed (*Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 405 N.E.2d 411) or where all prior negotiations between the parties are presumed to merge into a written contract (*World Insurance Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 329 N.E.2d 518). Even where merger might be expected to occur, it will fail if the second contract does not satisfy all the terms of the original agreement. (*Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 405 N.E.2d 411; *Hakala v. Illinois Dodge City Corp.* (1978), 64 Ill. App. 3d 114, 380 N.E.2d 1177.) Merger may not occur when the second contract "covers only a part of the subjects embraced in the prior one, and it plainly appears, from the character of the contracts, that the last one was not intended to be in performance or supersedure of the former one, and that the provisions in the former, not embraced in the latter, were intended to remain unaffected." (*Ely v. Ely* (1875), 80 Ill. 532, 537.) No argument has been made that the guaranty by five parties of a single note for $85,000 constituted performance of the original guaranty which provided for a continuing obligation of six guarantors for all debts owed to the bank by the corporation. A comparison of the expansiveness of the 1978 guaranty and the limited terms of the 1980 note and guaranty argues against a finding that the second was intended to supersede the first. Appellants cited *Noll Baking & Ice Cream Co. v. Sparks Milling Co.* (1940), 304 Ill. App. 624, 26 N.E.2d 425, in support of their merger argument, but *Noll* concerned modification rather than merger of contracts.

Appellants nevertheless seek to bring themselves within the language of *Kraft v. No. 2 Galesburg Crown Finance Corp.* (1981), 95 Ill. App. 3d 1044, 420 N.E.2d 865, where the court had "no diffi-

culty" in seeing that a 1977 contract for a $10,000 loan merged into a 1979 contract containing exactly the same terms, amounts, and language except for the omission of the word "estimated" from the description of the finance charges and total payments due. In the present case, however, there is not that degree of identity between the 1978 and 1980 instruments necessary to indicate merger as found in *Kraft*.

■ Appellants offer as an alternative to merger the theory that the 1980 note and guaranty constituted a novation between the parties by which the second guaranty was substituted for the first. The party asserting the existence of a novation has the burden of establishing it by a preponderance of the evidence. (*Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 316 N.E.2d 164.) It must be shown that all parties to both old and new agreements intended to substitute the new agreement for the old. (*Evans v. Owens* (1961), 30 Ill. App. 2d 114, 173 N.E.2d 850 (abstract of opinion).) The intention of the parties may be inferred from the circumstances and actions of the parties. *Lechleiter v. Lechleiter* (1947), 330 Ill. App. 517, 71 N.E.2d 845.

■ We do not think evidence produced at trial convincingly indicated that all parties to the 1978 guaranty intended to put the 1980 agreement in its place. Todd, one of the guarantors on the original agreement, knew nothing of the 1980 note and guaranty. Hair, who contacted the other guarantors, did not know Todd and was relieved of the responsibility of approaching him. The bank said it would reach him, although it did not.

■ Appellants contend that the bank's failure to include Todd on the 1980 note showed that they no longer regarded him as a viable guarantor and that they therefore intended to abandon the generous protection of the first guaranty for the narrow comfort of the second. However, Todd testified that his conversations with bank officers concerning a change in the first guaranty elicited from the bank no more than an agreement to talk with St. Cin about substituting him for Todd as a guarantor. It was Todd rather than the bank who considered Todd to be released from his obligation by these conversations. At no time did he give written notice of his intention to terminate his guaranty.

At the time of the second agreement, the bank still viewed Todd as someone it intended to approach regarding its loan security. The failure to reach Todd does not erase Hair's admission that the bank spoke of the 1980 note as involving Todd as the sixth signer. In discussing Todd's position in 1980, the bank was aware that he no longer held stock in the corporation but believed that St. Cin had agreed to

indemnify Todd. Presumably, an agreement for indemnity would not be necessary unless Todd was still considered subject to liability. It is clear that the bank expected Todd to have a continuing involvement regarding loans to Metals Recycling and that Hair knew that. The facts do not speak of any intention which would be satisfied by an agreement with only five signatures. Joining Todd as a defendant is consistent with the bank's view of Todd's continuing liability. Comments that it would not pursue him may reflect no more than the bank's belief that ultimate recovery would come from other guarantors, perhaps from Schweitzer on whom it made the only personal demand for payment.

■ Whatever the bank's intention was, evidence does not show that the bank and the signers of the 1980 note had any common understanding of that instrument. Hair admitted that no one from the bank had ever told him it was the bank's intention to replace one guaranty with another. His belief as to the nature of the agreement grew out of his inability to think of any other explanation for the bank's action. In communicating his understanding by letter to the guarantors he spoke only of one note replacing another. Schweitzer signed the 1980 note on the basis of his assumption it would replace the earlier guaranty. The other guarantors took their understanding of the instrument from Hair. None dealt directly with the bank. These circumstances were quite different from those in *Bridgeport State Bank v. Union Warehouse & Milling Co.* (1926), 137 Wash. 190, 242 P. 13, where a second guaranty was found to have superseded the first. There the bank and guarantors dealt directly with each other and the bank asked the guarantors to bring in the new guaranty so it could give them the benefit of a lower interest rate on the notes.

In view of the appellants' failure to show that all parties intended to accept the 1980 agreement as a substitute for 1978 guaranty, we find the trial court's judgment was not against the manifest weight of the evidence. The force of the original continuing guaranty was unabated and applied to the note for $114,792.41 on which Metals Recycling defaulted in 1981.

■ We turn now to the issue of $17,000 in attorney fees awarded to the bank. In the absence of an express contract which would control the compensation due, under a general contract providing for attorney fees, an attorney is entitled to be paid for the value of the services rendered as shown by the evidence.

> "The factors to be considered in determining the reasonable value of the service are: the skill and standing of the attorney employed; the nature of the cause and the novelty and diffi-

culty of the questions at issue; the amount and importance of the subject matter; the degree of responsibility involved in the management of the cause; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client." (*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 711, 355 N.E.2d 86.)

In the present case, the bank's attorney testified as to the value of his services in collection of the judgment, but the evidence did not support the award of $17,000. While the testimony concerning costs and fees for services already rendered did not show them to be unreasonable, the bank's attorney and expert witness could only speculate as to services which might be rendered in the course of collection. We are inclined to agree with the attorney's characterization of his own testimony as an estimate of fees for anticipated problems. Inasmuch as the guarantors are liable under the 1978 guaranty for "all cost reasonably incurred *** including attorneys' fees involved in making collection," we reverse the judgment as to the attorney fees and remand this cause so that the reasonable value of services rendered in the process of collection may be determined.

■ Finally, we consider the appellants' claim that the trial court improperly calculated the amount of interest due on the $114,792.41 note. Interest on the note began to accrue at 22.5% per annum on January 12, 1981, when the note was signed and it continued to accrue until judgment was entered on September 28, 1982, 20 months and 16 days later. (*Barker v. International Bank* (1875), 80 Ill. 96.) In computing interest, a month is a calendar month and a day is one-thirtieth of a month. (Ill. Rev. Stat. 1981, ch. 17, par. 6418.) The trial court's computation did not take into account the full period during which interest was accruing. We therefore reverse the judgment as to interest and remand this cause for recomputation of the interest due.

For the foregoing reasons, the judgment is affirmed in part, reversed in part and remanded for further proceedings in accord with the views expressed herein.

Affirmed in part; reversed in part; and remanded.

JONES and KASSERMAN, JJ., concur.