# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| | ) | |
| **BOATMEN'S BANK OF TENNESSEE**, | ) | Shelby County Chancery Court |
| | ) | No. 103622-2 |
| Plaintiff/Appellee. | ) | |
| | ) | |
| VS. | ) | C.A. No. 02A01-9607-CH-00166 |
| | ) | |
| **STEVEN K. DUNLAP** and | ) | |
| **ABSOLUTELY HILARIOUS** | ) | |
| **PRODUCTS, INC.**, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |
| | ) | |

**FILED**

**December 30, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable Floyd Peete, Jr., Chancellor**


**Harold F. Smith, Jr.**, Memphis, Tennessee
Attorney for Defendants/Appellants.


**Richard M. Carter**,
**Michael A. Brady**,
MARTIN, TATE, MORROW & MARSTON, Memphis, Tennessee
Attorneys for Plaintiff/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**INMAN, Sp. J.**: (Concurs)

This appeal has been taken from the trial court's order granting summary judgment in favor of Boatmen's Bank of Tennessee against Steven K. Dunlap and the trial court's order denying the motion to set aside the default judgment entered against Absolutely Hilarious Products, Inc. For the reasons stated herein, we affirm.

## FACTS

On December 7, 1993, Boatmen's Bank of Tennessee (hereinafter, "Bank") filed a complaint for money judgment against Steven K. Dunlap (hereinafter, "Dunlap") and Absolutely Hilarious Products, Inc., (hereinafter, "AHP") for debts allegedly due under various promissory notes and personal guarantees. Bank sued to collect from Dunlap two promissory notes he had made, one executed February 5, 1991, in the original amount of $254,750.00 which had an outstanding balance of $4,552.75, and another executed January 3, 1991, in the original amount of $350,000.00 which had an outstanding balance of $100,000.00. In addition the Bank sought to collect from AHP a promissory note executed October 30, 1991, in the original amount of $1,000,000.00 which had an outstanding balance of $904,380.00.

Bank represents that it hired a private process server to serve Dunlap and AHP, but the process server was unsuccessful on at least 20 separate occasions. Therefore, on January 5, 1994, Bank filed a Request for Service by Publication which the trial court granted by entry of order of publication on January 7, 1994. On January 21, 1994, Bank filed the "First Amended Verified Complaint for Money Damages, Attachment, Restraining Order, Temporary Injunction and Permanent Injunction." Service by publication upon Dunlap and AHP was completed on February 1, 1994. On February 15, 1994, service upon AHP was made by personal service upon AHP's corporate secretary, Berlyn Dunlap. Because no answer had been filed, on March 3, 1994, and March 11, 1994, Bank filed a motion for default judgment against Dunlap and AHP. By order entered March 18, 1994, the trial court granted the default judgment against AHP in the amount of $948,180.98.

On April 7, 1994, Dunlap and AHP filed an answer to the First Amended Complaint. On June 20, 1994, Dunlap and AHP served upon Bank a Rule 34 notice for production of documents

and things, and on September 16, 1994, Dunlap and AHP served Bank with a motion to compel. On June 22, 1994, Bank filed a motion for summary judgment against Dunlap, and following a September 20, 1994, hearing, the trial court granted summary judgment in favor of the Bank by order entered January 26, 1996.

On October 31, 1994, AHP filed a motion to set aside the default judgment pursuant to Rule 60.02 T.R.C.P. which motion was denied by order entered December 12, 1994. Dunlap filed a motion on February 24, 1995, seeking to amend his April 7, 1994, answer to assert a compulsory counterclaim. AHP filed a second motion to set aside the default judgment pursuant to Rule 60.02 T.R.C.P. on March 17, 1995[1]. AHP sought to set aside the judgment so that it could file a counterclaim. The trial court denied both Dunlap's motion to amend his answer and AHP's second motion to set aside the default judgment by Order on Pending Motions entered January 26, 1996. The trial court's order also denied Dunlap's motion to reconsider and for sanctions. On February 22, 1996, Dunlap and AHP timely filed a notice of appeal.

On October 8, 1996, Dunlap and AHP filed a third Motion to Set Aside Judgment by Default and Summary Judgment or in the Alternative for Stay of Proceedings. Bank filed a response, and the trial court denied AHP's motion by order entered October 29, 1996. A second order entered October 29, 1996, directed the release of certain funds in the amount of $28,506.49, which had been deposited by Dunlap with the trial court clerk in partial satisfaction of the judgment. Thereafter, Dunlap and AHP filed a second notice of appeal on November 6, 1996.

In addition to the aforementioned procedural history, Dunlap was also found to be in contempt of court. During the proceedings, the trial court directed Dunlap to disclose various records, and the trial court also entered an order finding Dunlap to be in contempt of court for his failure to abide by discovery requests. On April 6, 1994, the trial court entered an injunction prohibiting Dunlap from transferring or disposing of his assets. However, without obtaining leave of court, Dunlap violated the injunction as follows:

---

[1] AHP's second motion to set aside the default judgment is not in the record on appeal; however, it was argued as Appellant's fifth issue on appeal.

1. During the Summer of 1994, he transferred $30,000 from his attorney's escrow account;

2. On February 27, 1995, Dunlap transferred a ten acre parcel of land in Jonesboro, Arkansas, to Wyona Carter;

3. During 1995 and early 1996, Dunlap transferred some $99,000 from his account at the First Bank of Arkansas;

4. On January 11, 1996, Dunlap liquidated his holdings at Morgan-Keegan and Co. in Memphis, Tennessee;

5. On January 26, 1996, Dunlap transferred another ten acre parcel of land in Jonesboro, Arkansas, to his brother, Rodney Dunlap.

On September 12, 1994, Bank moved for an order to find Dunlap in contempt of Court for his withdrawing from his attorney's trust account and spending $30,000 in violation of the trial court's previous order entered January 21, 1994. In addition to the foregoing violations of the injunction, the trial court also found Dunlap to be in violation of the Tennessee Rules of Civil Procedure and the trial court's orders regarding discovery. Dunlap was scheduled to give his deposition on April 8, 1994, but the day before his attorney canceled the deposition because Dunlap allegedly had to be out of town on business. In fact, Dunlap was in Memphis on the day in question but simply chose not to give his deposition. The deposition was rescheduled for April 26, 1994, and Dunlap appeared but refused to answer questions until he had reviewed the deposition testimony offered by his mother.

On November 7, 1995, Bank field a verified petition to hold Dunlap in contempt of court. At a hearing held on December 7, 1995, the trial court ordered Dunlap to advise the Court of the status of the title of a new Jeep he had purchased with proceeds from the sale of the land and to produce the American Express records of payments and charges made since April 6, 1994. Dunlap did not comply. On February 19, 1996, Bank filed a petition to hold Dunlap in both civil and criminal contempt, and on February 27, 1996, Bank filed a request for production of documents in aid of execution. Dunlap made no reply. A hearing on the Bank's motion to compel discovery was held on June 28, 1996, and by order entered July 9, 1996, the trial court compelled discovery pursuant to the Bank's requests. Subsequently on July 16, 1997, an order was entered directing Dunlap, in lieu of a contempt hearing, to produce by July 17, 1996, his Morgan-Keegan account statements, a copy of the 1995 Jeep title and his American Express records. That same order

instructed Dunlap to appear for his deposition on the following day, July 18, 1996. Dunlap neither produced the requested information nor appeared for his deposition. Dunlap made a partial production of documents on July 29, 1996, but from the documents submitted, it was apparent that Dunlap had violated the trial court's April 9, 1994, order prohibiting disposition of his assets. Thereafter on August 9, 1996, Bank filed a second motion for contempt.

The petitions for contempt came to be heard on October 9, 1996, and on October 11, 1996, the trial court entered an order finding Dunlap in civil contempt for violating the April 6, 1994, injunction, the July 9, 1996, order compelling discovery, and the July 16, 1996, order to produce the American Express records. That same order also directed Dunlap to produce numerous records no later than November 11, 1996. Evidently, Dunlap never complied with the trial court's order by producing the documents.

As previously noted the trial court entered its final order in this cause on October 29, 1996, Dunlap and AHP timely filed a notice of appeal on November 6, 1996, and this cause is properly before this Court for consideration.

## ISSUES

On appeal, Dunlap and AHP have raised the following issues:

    I.     Whether the trial court erred in granting Bank's motion for summary judgment in holding that Dunlap could not contradict his deposition testimony by his affidavit;

    II.    Whether the trial court erred in granting Bank's motion for summary judgment while there was outstanding discovery;

    III.    Whether the trial court erred in granting Bank's motion for summary judgment while there were motions pending;

    IV.    Whether the trial court erred in denying Dunlap's motion to amend answer to file compulsory counterclaims;

    V.    Whether the trial court erred in denying AHP's motion to set aside the default judgment in order to allow it to file compulsory counterclaims;

    VI.    Whether the trial court erred in denying AHP's motion to set aside the default judgment when Bank's motion for default judgment

had been filed prior to an answer being due;

VII.   Whether the trial court erred in denying Dunlap's motion to reconsider and for sanctions;

VIII.   Whether the trial court erred in finding Dunlap in contempt of court; and

IX.   Whether the trial court erred in ordering the Chancery Court Clerk's Office to release to Bank funds on deposit.

Rule 56.04 T.R.C.P. provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

When the facts material to the application of a rule of law are undisputed, the application is a matter of law for the court since there is nothing to submit to the jury to resolve in favor of one party or the other. In other words, when there is no dispute over the evidence establishing the facts that control the application of a rule of law, summary judgment is an appropriate means of deciding that issue. *Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn.1993).

It follows that the issues raised by the motion for summary judgment of whether the plaintiff failed to present evidence supporting the essential elements of the cause of action, are questions of law. Consequently, the scope of review is *de novo* with no presumption of correctness. Rule 13 (d) T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). "No presumption of correctness attaches to decisions granting [or denying] summary judgments because they involve only questions of law. Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn. R. Civ. P. 56 have been met." *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991).

**I.      Whether the trial court erred in granting Bank's motion for summary judgment in holding that Dunlap could not contradict his deposition testimony by his affidavit;**

**II.      Whether the trial court erred in granting Bank's motion for summary judgment while there was outstanding discovery; and**

**III.     Whether the trial court erred in granting Bank's motion
for summary judgment while there were motions pending:**

The Bank established that Dunlap executed the $350,000 note, and Dunlap even admits such in his Answer to Amended Complaint.  Dunlap was unable to produce any proof that he had paid the note.  As of March 11, 1994, Dunlap owed $100,000 on the principal, $2,994.44 in accrued interest and additional interest accruing at $19.44 per day.  We find no evidence in the record suggesting that summary judgment on this issue was inappropriate and accordingly affirm the trial court's decision in this regard.

In addition to executing the notes, Dunlap also executed two personal guarantees to secure the indebtedness of AHP.  Dunlap admitted to executing the October 30, 1991, note for $1,000,000 as President of AHP.  He also admitted executing both the July 17, 1991, and October 30, 1991, guarantees of AHP's debt.

The Bank established the validity of the obligations as well as Dunlap's and AHP's default on the notes and guarantees.  The note executed on October 30, 1991, was due in full on October 30, 1992.  The Bank held the note and had the right to sue to collect on it.  ***See, e.g.***, ***Martin v. Martin***, 755 S.W.2d 793 (Tenn. App. 1988); ***Long v. Range***, 213 S.W.2d 52, 54-55 (Tenn. App. 1948).  Because the Bank also held Dunlap's personal guarantees on AHP's debt, it had a right to sue Dunlap as well.

A guarantor in a commercial transaction shall be held to the full extent of his obligation and the words of his guarantee are to be taken as strongly against the guarantor as sense will admit.  ***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 804-805 (Tenn. 1975); ***First Am. Nat'l Bank of Nashville v. Hall***, 579 S.W.2d 864, 868 (Tenn. App. 1978).  The guarantees at issue here were continuing, absolute and unconditional with respect to AHP's debt.  The guarantees were never terminated, and Dunlap is liable for both principal and interest due on AHP's note.  The amount of the outstanding note was established by the unchallenged affidavit of Aubrey G. Oliver, Senior Vice President and Manager of the Credit Department of Boatmen's Bank, executed on March 3, 1994.  Therefore, the trial court properly entered summary judgment in favor of the Bank

and against Dunlap.

Dunlap raised as an issue on appeal the question of whether his third Affidavit of September 13, 1994, created a genuine issue of material fact regarding the July 17, 1991, guarantee so as to preclude entry of an order of summary judgment. In his amended answer to the complaint, Dunlap admitted that he entered into a guarantor relationship with the Bank. Furthermore, Dunlap admitted in his May 24, 1994, deposition that he recognized the July 17, 1991, guarantee and that it bore his signature. Specifically, he stated:

> Q.      I'm going to pass to you now what has been marked as Exhibit 15 to your deposition [the original July 17, 1991, Guarantee], and I'm going to ask you if you recognize this document and if that is your signature at the bottom?
>
> A.      Yes, I do recognize the document and it is my signature.

Dunlap asserts that he has created a genuine issue of material fact by statements contained in his third Affidavit executed September 13, 1994. Examination of the affidavit in question reveals that the testimony Dunlap contradicts is not that of May 24, 1994, but rather that of April 26, 1996. The affidavit reads in relevant part:

> 6.      Prior to now, I have not had the discovery necessary to attempt to prove the purported July 17, 1991, guarantee is a fraudulent document. In Volume 1 of my deposition when I first saw the purported guarantee, I stated that I did not recognize it and, although it looked like my signature, it appeared to be photocopied onto the guarantee.
>
> 7.      To date, I still have not seen an original of the purported July 17, 1991 guarantee.

It is clear that the cited sections of the third Affidavit refer to Dunlap's first deposition taken on April 26, 1994, and not to the May 24 deposition. When Dunlap was confronted with the original July 17, 1991, guarantee, Dunlap stated without equivocation that the guarantee bore his signature. The May 24 deposition referred to "Exhibit 15" which was the original July 17, 1991 guarantee. The mere existence of Exhibit 15 contradicts Dunlap's statement to the contrary, and this point is supported by the affidavit of Sheryl Weatherford, the court reporter at the May 24 deposition, who

stated that Exhibit 15 was the original July 17, 1991, guarantee.

In light of the foregoing, we do not find that Dunlap's affidavit testimony which addressed a different deposition and which states facts that are fundamentally wrong can create a genuine issue of material fact. The test for a "genuine issue" is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. If the answer is yes, summary judgment is not appropriate; if the answer is no, summary judgment is proper because a trial would be pointless as there would be nothing for the jury to do and the judge need only apply the law to resolve the case. In making this determination, the court is to view the evidence in a light favorable to the nonmoving party and to allow all reasonable inferences in his favor. "Genuine issue" as used in Rule 56.03 refers to disputed, material facts. It cannot be said that patently false statements create genuine issues of material fact so as to preclude summary judgment. *See, e.g., Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993).

While it is true that Dunlap may explain or contradict prior testimony with an affidavit, the effect is merely that the conflicting statements cancel out each other. *Tibbals Flooring Co. v. Stanfill*, 410 S.W.2d 892, 896 (Tenn. 1967). Two sworn inconsistent statements by a party are of no probative value in establishing a disputed issue of material fact. *Price v. Becker*, 812 S.W.2d 597, 598 (Tenn. App. 1991). We would then be forced to disregard the statements as a matter of law. *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 162 (Tenn. App. 1984). Even if the affidavit were to cancel out the prior admission, the undisputed admission contained in Dunlap's answer remains. Boatmen's amended complaint stated:

> 7.      Dunlap unconditionally guaranteed all indebtedness, obligations and liabilities of Products [AHP] to Boatmen's in a guarantee attached here to as EXHIBIT D [July 17, 1991 Guarantee]

In response, Dunlap stated in his answer:

> 7.      Dunlap would admit that he entered in a Guarantor agreement with Boatmen's Bank.

Moreover, summary judgment was proper because Dunlap identified and acknowledged his

signature on the October 30, 1991, guarantee, AHP's $1,000,000 note and AHP's line of credit which he signed as Guarantor. Dunlap's argument is without merit in light of the October 30, 1991, guarantee.

Dunlap also asserts on appeal that summary judgment was inappropriate because the trial court granted the motion while Dunlap's "Notice of Request for Production of Documents and Things" was outstanding. However, it appears to the Court that the Bank filed a response to the discovery request on July 19, 1994, and made the documents available for inspection and copying. Dunlap also asserts that the trial court erred in granting summary judgment because Dunlap's motion to compel had not been heard. However, there is no indication that Dunlap ever set the motion for hearing and it appears that Dunlap made no attempt at discovery between September, 1994, and January, 1996, when the trial court entered the order granting summary judgment.

Dunlap's assertion that the discovery was outstanding is disingenuous in light of the admission contained in his third Affidavit of September 13, 1994, that he had "been examining a number of documents produced in discovery by the Plaintiff . . ." If the Bank did, in fact, fail to comply with the discovery request, Dunlap should have followed the procedure mandated in such circumstances by Rule 56.07 T.R.C.P. That rule states:

> Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56.07 T.R.C.P. The record is devoid of any evidence that Dunlap ever filed an affidavit that complied with the foregoing Rule stating the need for further discovery. Furthermore, Dunlap requested and was granted an extension in which to respond to the motion for summary judgment and did not file the affidavit during that time. Therefore, Dunlap should not be heard to now complain. Dunlap also asserts that "[t]here is some doubt regarding the propriety of the court's granting a motion for summary judgment while various motions are pending." The two outstanding motions to which he refers are AHP's "Motion to Set Aside Default Judgment" and Dunlap's

"Motion to Amend Answer to File Compulsory Counterclaim."

Appellant does not indicate how the outstanding motions might create a genuine issue of material fact so as to preclude summary judgment. We find no requirement that all outstanding motions be resolved in advance of summary judgment. Under Rule 56 T.R.C.P., once the Bank established Dunlap's liability, the burden shifted to Dunlap to establish that a genuine issue of material fact existed. Dunlap failed to demonstrate such facts, and we find that this issue is without merit.

**IV.     Whether the trial court erred in denying Dunlap's motion to amend answer to file compulsory counterclaims:**

The Bank moved for summary judgment on June 22, 1994. After being postponed twice at Dunlap's insistence, the motion was heard on September 20, 1994. On February 24, 1995, Dunlap filed a Motion to Amend Answer to File Compulsory Counterclaim. Rule 15.01 T.R.C.P. provides that leave to amend pleadings is to be freely given. However, despite the liberality of our Rules, the decision to permit amendment is within the sound discretion of the trial court, and such decisions are rarely reversed on appeal unless there is an abuse of discretion. *Wilson v. Ricciardi*, 778 S.W.2d 450, 453 (Tenn. App. 1989). One relevant factor guiding the Court in this case is Dunlap's delay in filing the motion to amend answer. *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. App. 1979).

In *Welch v. Thuan*, 882 S.W.2d 792, 794 (Tenn.App. 1994), this Court addressed a similar circumstance and found that it was not error for the trial court to deny a plaintiff's motion to amend the complaint where it appeared that the movant had filed the motion to amend within a week after the motion for summary judgment had been filed. In this case, Dunlap waited seven months after the motion for summary judgment had been filed and some five months after the hearing on the motion before filing a motion to amend the complaint. In light of the foregoing, we find that the trial court did not abuse its discretion in denying the motion to amend, and in granting summary judgment to the Bank on the basis of the pleadings as they stood at the time the motion for summary judgment was filed. *Id*. at 794. The decision of the trial court in this regard is affirmed.

**V. Whether the trial court erred in denying AHP's motion to set aside the default judgment in order to allow it to file compulsory counterclaims:**

The Bank filed a motion for default judgment against AHP on March 11, 1994, which the trial court granted on March 18, 1994. AHP did not file a notice of appeal from that judgment. On October 31, 1994, AHP filed a Rule 60.02 T.R.C.P. motion to set aside judgment by default. The trial court denied the motion by order entered December 12, 1994. AHP filed a second Rule 60.02 T.R.C.P. motion to set aside the default judgment on March 17, 1995, which the trial court denied by "Order on Pending Motions" entered January 26, 1996. Thereafter, Dunlap and AHP filed the notice of appeal on February 22, 1996.

Parties seeking relief from a judgment by means of a Tenn.R.Civ.P. 60.02 motion have the burden of proving that they are entitled to relief. *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn.1978); *Rhea v. Meadowview Elderly Apartments, Ltd.*, 676 S.W.2d 94, 95 (Tenn. App.1984). This is also true for parties seeking relief from a default judgment in accordance with Tenn.R.Civ.P. 55.02 and Tenn.R.Civ.P. 60.02. However, motions to set aside default judgments are not viewed with the same strictness that motions to set aside judgments after a hearing on the merits are viewed. Motions to set aside default judgments are construed liberally in favor of granting the relief requested. *Tenn. Dept. of Human Services v. Barbee*, 689 S.W.2d 863, 867 (Tenn.1985).

Obtaining relief from a default judgment is generally accomplished in one of two ways. Most commonly, the movant sets forth facts explaining why it is entitled to relief and demonstrating that it has a meritorious defense to the underlying action. However, a default judgment can also be set aside upon proof in accordance with Tenn.R.Civ.P. 60.02(3) that the judgment itself is void. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100-101 (Tenn.1984); *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn.1978).

An order denying a Tenn.R.Civ.P. 60.02 motion is a final order. Thus, an affected party may, at its option, pursue a direct appeal or seek a re-examination of the order pursuant to Tenn.R.Civ.P. 59. *Inryco, Inc. v. Metropolitan Engineering Co., Inc.*, 708 F.2d 1225, 1232 (7th Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 347 (1983); *Daly Mirror, Inc. v. New York News, Inc.*,

533 F.2d 53, 56 (2d Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 166 (1976). In this case, Appellants did not appeal the trial court's denial of the first motion to set aside order granting default judgment entered December 12, 1994. Accordingly, it appears that the judgment is final, and the second motion to set aside default judgment filed March 17, 1995, is barred by the doctrine of *res judicata*. *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. App. 1990); *Stacks v. Saunders,* 812 S.W.2d 587, 590 (Tenn. App. 1990).

AHP also moved to set aside the default judgment so that it could file a compulsory counterclaim; however, the trial court denied the motion, holding that the proposed counter-claims could not be filed after entry of judgment. In *Ingram v. Phillips*, 684 S.W.2d 954, 958 (Tenn. App. 1984), the trial court had entered a judgment in favor of plaintiff. After entry of judgment, defendant sought to amend the judgment in order to assert a compulsory counterclaim, which the trial court denied. On appeal, the Middle Section of this Court held that defendant's attempts to assert a compulsory counterclaim after the entry of the judgment came too late, and defendant was barred from asserting the counterclaim. Likewise, we find that the issue is without merit.

**VI.     Whether the trial court erred in denying AHP's motion to set aside the default judgment when Bank's motion for default judgment had been filed prior to an answer being due:**

Appellants argue that the default judgment is void because the motion for default judgment was filed before a timely response by AHP was due and because the Bank failed to give AHP the required notice of the motion for default judgment. The Bank filed its original complaint in this cause on December 7, 1993. The Bank was unable to personally serve Dunlap, and on January 7, 1994, the trial court entered an order of publication. On January 21, 1994, the Bank filed its First Amended Verified Complaint. Service of process by publication was completed on February 1, 1994, as evidenced by the notice of filing of proof of publication on February 7, 1994. On February 15, 1994, the Bank personally served process upon AHP's corporate secretary, Berlyn Dunlap. The Bank subsequently discovered that Dunlap was residing in Florida. Thereafter, on March 2, 1994, the Bank served Dunlap and AHP with the Bank's motion for default judgment based upon the service of process by publication completed February 1, 1994. On March 4, 1994, the Bank sent Dunlap and AHP copies of the Affidavit of Aubrey G. Oliver.

On March 11, 1994, the Bank filed a motion for judgment by default based on the February 15, 1994, personal service on AHP's corporate secretary, Berlyn Dunlap. That motion expressly stated that the motion would be heard on March 18, 1994, if no answer was filed. The Bank then served notice upon Dunlap at both his last known Memphis address and at his Florida address. On March 18, 1994, the trial court entered a default judgment against AHP.

Rule 12.01 T.R.C.P. expressly provides:

> A defendant shall serve and file an answer within thirty (30) days
> after the service of the summons and complaint upon him . . .

Therefore, AHP had 30 days after service in which to file an answer. AHP did not do so. The original complaint was filed on December 7, 1993, and the First Amended Verified Complaint was filed on January 21, 1994. In spite of the service by publication completed February 1, 1994, the Bank personally served AHP through its corporate secretary on February 15, 1994. While it is undisputed that the motion for default judgment was filed before the answer was due, we find no prohibition to that practice. AHP did not file an answer within 30 days as required by the Rules. The motion for default judgment was neither heard nor the order granted until March 18, 1994, which was more than 30 days after the First Amended Verified Complaint had been filed.

Rule 55.01 T.R.C.P. contains no prohibition against the premature filing of a motion for default judgment so long as the order on default judgment is not entered until after the time the defendant has had to respond. AHP argues that the Bank did not give it proper notice of the hearing on the motion for default judgment. The facts are uncontroverted that the Bank personally served AHP's corporate secretary with a copy of the First Amended Verified Complaint on February 15, 1994. Thereafter, the Bank on March 11, 1994, served both AHP and Dunlap with the motion for default judgment and a notice of the hearing on motion for default judgment. AHP did not make an appearance, timely file an answer, nor come forward with any explanation as to why it failed to plead or otherwise defend this action. The Bank complied with all rules regarding obtaining a default judgment, and the trial court properly granted the Bank's motion for default judgment against AHP.

**VII.     Whether the trial court erred in denying Dunlap's motion
to reconsider and for sanctions:**

In its supplemental memorandum in support of summary judgment, the Bank cited the case of ***Wilkerson v. Standard Knitting Mills, Inc.***, 1989 WL 120298 (Tenn. App. Oct. 11, 1989). In fact, the portion of the case relied upon by the Bank was this Court's dissent, and the Bank did not designate it as such. Dunlap subsequently filed a motion to reconsider ruling and for sanctions on July 10, 1995. That motion was ultimately denied by the trial court on January 26, 1996. That same January 26, 1996, order granted the Bank's motion for summary judgment.

It appears to the Court that the Bank's counsel notified the trial court of the error on July 10, 1995, during a hearing. Bank's counsel stated:

> I have an apology to make to the Court and a clarification. Mr. Smith this morning brought to my attention that there was a miscitation on my part of an unreported case. In a supplemental memorandum I referred to an unreported case. . . . When I cited the Court, I did not explain that I was citing, and I frankly didn't see it. Mr. Smith just brought it to my attention. In the case of Wilkerson Standard versus Standard Knitting Mills what I cited to the Court was from the dissenting opinion.

The trial court was aware of the mistake on July 10, 1995, and even addressed the issue during the hearing. The trial court stated:

> In the case I didn't rely upon it [Wilkerson case] and I will look at it and see, and if it is not a determining factor, there is not a lot to talk about probably.

In addition to pointing out the mistake, Dunlap moved the trial court for Rule 11 T.R.C.P. sanctions against the Bank's counsel including denying the motion for summary judgment, dismissing the Bank's counsel of record, and awarding Dunlap attorney's fees and costs. The trial court denied said relief. We do not find that the trial court erred in this regard.

It appears to the Court that the erroneous citation to legal authority was inadvertent and unintentional. The trial court went so far as to state that it had not relied upon the ***Wilkerson***

case, and the Bank cited in its memorandum to other reported authority that has not been challenged. It further appears that the trial court was aware of the mistaken citation for over six months from July 10, 1995, until the entry of the order granting the motions for summary judgment on January 26, 1996. In light of the foregoing, the trial court did not err in denying Dunlap's motion for reconsideration and for sanctions, and we affirm the trial court's decision denying the requested relief.

### VIII. Whether the trial court erred in finding Dunlap in contempt of court:

Dunlap has appealed the October 11, 1996, "Order on Contempt" which found him to be in contempt of court for his failure to abide by the trial court's April 6, 1994, injunction against transferring and disposing of assets, for his failure to comply with the July 9, 1996, Order Compelling Discovery and the July 16, 1996, Order to produce American Express records. The trial court ordered Dunlap to produce all records related to ownership of both bank and investment accounts and related transactions. The Order also required Dunlap to produce all American Express records, bank records, income tax records and the like.

Dunlap asserts that under the rationale of *Loy v. Loy*, 222 S.W.2d 873 (Tenn. App. 1949), a party may be tried only once for contempt. He maintains that the trial court had administered punishment previously and that he should not be punished again for the prior contempt because the trial court had already administered punishment for the previous offenses.

During the course of the proceedings, the trial court ordered Dunlap to comply with the discovery requests on several occasions. By order entered July 9, 1996, the trial court compelled discovery pursuant to the Bank's requests. Subsequently on July 16, 1997, an order was entered directing Dunlap, in lieu of a contempt hearing, to produce his Morgan-Keegan account statements, copy of the 1995 Jeep title and his American Express records. That same order instructed Dunlap to appear for his deposition on the following day, July 18, 1996. Dunlap neither produced the requested information nor appeared for his deposition. Dunlap made a partial production of documents on July 29, 1996, but from the documents submitted, it was apparent that Dunlap had violated the trial court's April 9, 1994, order prohibiting disposition of his assets. Thereafter on

August 9, 1996, Bank filed a second motion for contempt.

The petitions for contempt came to be heard on October 9, 1996, and on October 11, 1996, the trial court entered an order finding Dunlap in civil contempt for violating the April 6, 1994, injunction, the July 9, 1996, order compelling discovery, and the July 16, 1996, order to produce financial records. That same order also directed Dunlap to produce numerous records no later than November 11, 1996. Evidently, Dunlap never complied with the trial court's order by producing the documents.

There has been no showing that Dunlap ever complied with the trial court's directives or that he otherwise complied with the discovery requests. Therefore, Dunlap has not purged himself of contempt, and we find that Dunlap has only been "punished" for contempt once by entry of the October 11, 1994, "Order on Contempt."

Civil contempt is intended to benefit the litigant by compelling compliance with the trial court's orders. Parties in contempt may purge themselves by compliance. There is a maxim in the law that

> He who seeks Equity must do Equity, and he who has done inequity shall not have Equity." Therefore, it is a general rule that a party who is in contempt will not be heard by the Court, when he wishes to make a motion or ask a favor; . . . . His first duty is to purge his contempt, and the only steps he can take are to apply to the Court (1) to set aside the proceedings against him because they are irregular, and (2) to be discharged on the ground that he has purged himself of his contempt, by doing the act for the non-performance of which the contempt was incurred, and confessing judgment for the costs occasioned by his contumacy.

*Segelke v. Segelke*, 584 S.W.2d 211, 214 (Tenn.App. 1978) (quoting *Gibson's Suits in Chancery*, 5th ed., Vol. 2, § 970, p. 195).

In this case, Dunlap has not purged himself of contempt. However, rather than refuse to hear the appeal, in the interest of judicial economy, we will hear and dispose of the appeal. In so doing, we find that Dunlap was punished once for contempt by order entered October 11, 1996, and

that he has not purged himself of said contempt. Accordingly, we find that Dunlap has no basis to complain.

### IX. Whether the trial court erred in ordering the Chancery Court Clerk's Office to release to Bank funds on deposit:

On October 8, 1996, Dunlap and AHP filed a motion, *inter alia*, to stay the proceedings to enforce the judgment. The trial court denied said request by order entered October 29, 1996, and released to the Bank funds paid into the trial court by Dunlap and/or AHP. That order resulted in a disbursement to the Bank in excess of $28,000. Appellants subsequently petitioned this Court for relief which we denied by Order entered December 6, 1996. Dunlap asserts that it was error for the trial court to release the funds while the appeal was pending. In light of the fact that we have found, as did the trial court, that Dunlap and AHP are liable for the judgment, we conclude that it was not error for the trial court to release said funds before conclusion of the appeal.

For the foregoing, reasons, we conclude that the judgment of the trial court should be and is affirmed in all respects.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
INMAN, Sp. J. (Concurs)